JOURNAL ENTRY and OPINION
{¶ 1} Appellant Ulious Brooks appeals his convictions and sentence for voluntary manslaughter and having a weapon under disability. On appeal, he assigns four errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm in part and reverse in part the trial court's decision. The apposite facts follow.
 THE SHOOTING OF TYRONE KING {¶ 3} The Cuyahoga County Grand Jury indicted Brooks for the murder of Tyrone King. The indictment charged one count of murder with a three-year firearm specification, and one count of having a weapon while under disability.
 {¶ 4} Brooks moved to suppress his statement on the grounds that his Miranda rights had been violated. Brooks also moved to dismiss the charge of having a weapon while under disability because the indictment failed to include the necessary element, that he was not relieved from disability. After the hearing, the trial court denied both motions.
 {¶ 5} Thereafter, Brooks waived his right to a jury trial only as to the charge for having a weapon while under disability, and the murder trial was commenced.
 {¶ 6} Sasha Sanford was the girlfriend of Tyrone King. On the night before King's murder, Sasha Sanford had a confrontation with Brooks. Brooks allegedly attempted to strike her and they tussled. After the incident, Jason Sanders, Tyrone King's brother and Sanford's friend, arrived at the apartment and was told of the incident. Sanders confronted Brooks and several other males in the hallway of the apartment building.
 {¶ 7} Again, a tussle ensued. Sanford claimed $500 of her money was dropped during the fight and one of the men retrieved the money.
 {¶ 8} The next day, Tyrone King and Sanders encountered Brooks and Samuel Adams. The four men fought. Sanford, who was observing the fight from a short distance away, saw Brooks shoot King. She heard a single gunshot and saw King fall on top of Brooks. King yelled to Sanders to get the gun out of Brooks' hand. Sanders pried the gun from Brooks' hand and began hitting him in the face with the butt of the gun. Brooks managed to get from under King and ran into a nearby store. King died at the hospital.
 {¶ 9} He arrived at the apartment where the confrontation between Brooks and Sanford had taken place. He tried to intervene and to defuse the situation, but the situation escalated. There were several men in the hallway, including Brooks. One man had a shotgun and fired it in the air. Sanders and Sanford retreated. Later that night, Sanders called King and relayed everything that had transpired and they agreed to meet the next day to confront Brooks.
 {¶ 10} Sanders testified that the next day he and King encountered Brooks and Samuel Adams. While he was fighting Adams, he heard a single gunshot and when he turned around, he saw his rother lying on top of Brooks. King then told Sanders that Brooks had shot him.
 {¶ 11} Sanders admitted that he did not see Brooks shoot King. Sanders denied taking the gun out of Brooks' hand and denied that the gun belonged to King. Finally, Sanders testified he handed the gun to L.C. Robinson to give to the police.
 {¶ 12} Samuel Adams, Brooks' cousin, stated Sanford knocked on his aunt's apartment door. When Brooks answered the door, Sanford cursed at him, and Brooks responded by slamming the door in her face. A few minutes later, Sanford returned and a heated exchange took place between her and Brooks. Later, Sanders arrived and a fight broke out in the hallway. During this time, Sanford, who was boasting about making money, threw about $500 in the hallway.
 {¶ 13} After the fight was over, Sanders spoke with Brooks' aunt, Elizabeth Bailey. Sanders told her that everything was over and settled.
 {¶ 14} The following day, Adams and Brooks walked to the corner store. While they were walking, Adams heard someone say "hey, Ulious, come here, let me have you."[2] When Adams and Brooks turned around, they saw King and Sanders. Adams and Brooks asked them why they wanted to talk to them, at which point, Sanders swung at Adams. A tussle erupted with Adams and Sanders fighting each other. In the meantime, while Brooks was tussling with King, Adams heard a gunshot. Adams ran to his aunt's apartment.
 {¶ 15} Vicky Robinson stated Brooks confronted Sanford and threatened to punch her teeth out for having a smart mouth. The confrontation resulted in the aforementioned fight in the hallway of the apartment building.
 {¶ 16} The following day, while Robinson was returning from the grocery store, she saw a crowd gathered near her apartment. An ambulance and police squad car were present. As she approached, Sanford told her that Brooks had shot King. Robinson returned to her apartment a few minutes later. Her son L.C. gave her a gun and told her to turn it into the police. Robinson placed the gun in a clothes hamper.
 {¶ 17} Robinson stated she saw Brooks with a gun the previous night. However, she was not sure that it was the same gun her son had given her. Finally, Robinson testified she believed that the argument between Brooks and Sanford was over a bad batch of marijuana Brooks had sold Sanford.
 {¶ 18} Detective Jeffrey Sampson of the Cleveland Police Department stated he took Brooks' statement at the police station on March 15, 2003. In the statement, Brooks admitted to cheating Sanford on March 12, 2003, when he sold her six bullets instead of the twelve they agreed to for $30. On March 13, 2003, when Sanford discovered Brooks had cheated her, she threatened him. Brooks stayed at his cousin's house, because he knew Sanford had a gun.
 {¶ 19} Brooks also related in his statement that the following day, while walking to the store with his cousin, two men yelled to them. As he turned around, the two men ran up to them and wanted to talk. Both men punched Brooks. Brooks started to run, but one of the men grabbed Brooks by the collar of his sweatshirt and proceeded to hit him. Brooks turned around, saw a gun in his face, and grabbed the gun. After the scuffle, one of the men took the gun from Brooks, who then fell to the ground. The men started stomping, kicking, and hitting Brooks. Both men hit Brooks with the gun.
 {¶ 20} Further, with a gun pointed at him, Brooks crawled into a nearby store. Brooks then heard two gunshots and the men said "let's go."[3] The two men ran in the direction of East 109th Street and Brooks ran in the opposite direction.
 {¶ 21} Brooks denied carrying a gun on March 14, 2003, and denied shooting King. When presented with photographs, Brooks identified Sanders as one of the two men he had encountered on the street. However, Brooks did not identify King as the other man. When asked if he could identify four bullets that were taken out of the gun submitted as evidence, Brooks claimed they looked like bullets he sold to Sanford.
 {¶ 22} The defense called Melinda Curry as their sole witness. According to Curry, on March 14, 2003, she was driving in her car along with her sister. While at a stop sign, she saw a crowd of men beating a man who was laying on the ground. She heard two gunshots and then saw a man running with a gun in his hand and a girl following behind. She called the police and proceeded on her way, but decided to return in order to talk to the police. She could not recall what she told the police.
 {¶ 23} Near the conclusion of the jury trial, the State requested that the trial court read the jury instruction on voluntary manslaughter. Further, the State requested that the trial court exclude portions of the jury instructions that dealt with affirmative defenses. Meanwhile, the defense requested that the trial court read jury instructions on accident, reckless homicide, and negligent homicide. The court decided to read the jury instruction on voluntary homicide.
 {¶ 24} The jury returned a verdict of not guilty on the charge of murder, but found Brooks guilty of voluntary manslaughter and the firearm specifications. The trial court also found Brooks guilty of having a weapon while under disability. The trial court sentenced Brooks to a prison term of nine years for voluntary manslaughter and one year for having a weapon while under disability. Additionally, the trial court sentenced Brooks to a prison term of three years for the firearm specification. The prison terms were to be served consecutively. In sum, Brooks was sentenced to a total of thirteen years in prison. Brooks now appeals.
 HAVING A WEAPON WHILE UNDER DISABILITY {¶ 25} In the first assigned error, Brooks argues the trial court erred in failing to dismiss the charge of having a weapon while under disability, because the indictment failed to state an element of the offense. We disagree.
 {¶ 26} R.C. 2923.13(A)(2) reads in relevant part:
"Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
"* * *
"(2) Such person is under indictment for or has been convicted of any felony of violence * * *."
 {¶ 27} In the instant case, Brooks contends the trial court should have dismissed the charge because the indictment failed to state that he was not relieved from disability as provided by R.C. 2923.14.
 {¶ 28} Numerous courts have decided the phrase "Unless relieved from disability" as provided in section 2923.14 of the Revised Code, does not constitute an element of R.C. 2923.13 which must be proven by the State.[4] Instead, the phrase states an affirmative defense that may be shown to invalidate criminality.[5]
 {¶ 29} The defendant is in the best position to show that his disability has been removed. Requiring the State to prove that the defendant never applied for and was never granted relief from disability is an onerous burden, which was not intended by the legislature in its enactment of R.C. 2923.13.[6] Thus, the trial court properly declined to dismiss the charge of having a weapon while under disability. Accordingly, Brooks' first assigned error is overruled.
 DISMISSING A JUROR FOR CAUSE {¶ 30} In the second assigned error, Brooks argues the trial court erred in dismissing a juror for cause in violation of Crim.R. 24 and theSixth and Fourteenth Amendments to the U.S. Constitution. We disagree.
 {¶ 31} Trial courts have discretion in determining a juror's ability to be impartial.[7] R.C. 2313.42(J) states that good cause exists for the removal of a prospective juror when "he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court." A prospective juror who has been challenged for cause should be excused if the court has any doubt as to the juror's being entirely unbiased.[8]
 {¶ 32} However, a ruling will not be disturbed on appeal unless it is manifestly arbitrary so as to constitute an abuse of discretion.[9]
 {¶ 33} The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.[10]
 {¶ 34} During voir dire, one of the prospective jurors informed the court that she had a son in prison for a homicide. The juror stated her son was prosecuted ten years earlier and that the Cuyahoga County Prosecutor's Office and the Cleveland Police Department handled the case. Additionally, she stated that upon the advice of his attorney, her son pled guilty to aggravated murder and was sentenced to a prison term of 25 years to life. Further, the following exchange took place during voir dire:
"State: Were you satisfied with the result in your son's case?
Juror: No, I wasn't.
State: Okay. Do you think he was treated unfairly?
Juror: Absolutely.
State: And do you think he was treated unfairly by the judicial system or the — the police, the prosecutors, by whom?
Juror: The judicial system and the prosecutors."[11]
 {¶ 35} Thereafter, an in-camera proceeding was held in chambers with the juror. The juror stated that she and her mother were misled by the defense attorney in advising her brother to enter a guilty plea. She stated she harbored no ill will against the prosecutor's office or towards the Cleveland Police Department. Finally, the juror stated she had no problem sitting as a juror on a murder trial and that she could separate her son's case from the one at hand.
 {¶ 36} Subsequently, the State moved to remove the juror for cause on the basis that she seemed to harbor resentment toward the judicial system. Defense counsel objected on the basis that the juror never said she could not be fair and impartial. However, in removing the juror for cause, the trial court stated the following:
"But she has indicated that she doesn't think that the system treated both her — her nor her son — she thinks somebody misled both her and her mother into tricking her son and as a result of that her son has been taken away from her and her family for the last ten years and that she doesn't think that it's fair. So do you really think that somebody with that thought pattern could be a fair juror . . ."[12]
 {¶ 37} However, Brooks cites State v. Hillenbrand[13] in support of the notion that there is no reason to excuse a prospective juror who has been open and honest and understands the right to a fair trial. InHillenbrand, a prospective juror acknowledged she was the victim of an attempted molestation when she was approximately 12-years-old. Since the defendant was indicted for kidnapping a 12 year old girl, the trial court and both parties questioned the prospective juror concerning the incident in an effort to determine whether the prospective juror could remain impartial throughout the proceedings. The prospective juror was subsequently impaneled, and on appeal to this court, we found no prejudice to the appellant.
 {¶ 38} The determination of juror bias necessarily involves a judgment on credibility, the basis of which will not often be apparent from an appellate record.[14] Therefore, deference must be paid to the trial judge who sees and hears the juror.[15]
 {¶ 39} Here, after considering defense counsel's objection to the State's challenge for cause, the trial court determined that it was inappropriate for the juror to sit in the present case, because she believed that the judicial system failed her son. The trial court had the opportunity to observe the prospective juror's demeanor, voice inflection and facial expression, and thus, made the decision to exclude the prospective juror for cause. Under these circumstances, no abuse of discretion on the part of the trial court is apparent. Accordingly, Brooks' second assigned error is overruled.
 JURY INSTRUCTIONS {¶ 40} In the third assigned error, Brooks raises five issues regarding the trial court's jury instructions and one issue of ineffective assistance of counsel. For ease of discussion, we will only address the claims dealing with jury instructions in this assigned error and address the ineffective assistance of counsel claim in Brooks' fourth assigned error.
 {¶ 41} A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced.[16] It is well established that a trial court should confine its instructions to the issues raised by the pleadings and the evidence.[17]
 {¶ 42} In Ohio, it is well established that the trial court will not instruct the jury where there is no evidence to support an issue.[18]
However, requested instructions should ordinarily be given if they are correct statements of law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the specific instruction.[19] The trial court is not required to give a proposed jury instruction in the exact language requested by its proponent, even if it properly states an applicable rule of law. The court retains discretion to use its own language to communicate the same legal principles.[20]
 {¶ 43} A single challenged jury instruction may not be reviewed piecemeal or in isolation but must be reviewed within the context of the entire charge.[21] Accordingly, the proper standard of review for an appellate court is whether the trial court's refusal to give a defendant's requested instruction constituted an abuse of discretion under the facts and circumstances of the case.[22] In the first subclaim, Brooks argues the trial court erred in giving a voluntary manslaughter instruction and imposing an affirmative defense on Brooks even though he denied shooting the victim, because this violates the Fourteenth Amendment of the U.S. Constitution. We disagree.
 {¶ 44} Voluntary manslaughter is an inferior degree of murder, because its elements are contained within the indicted offense, except for one or more additional mitigating elements.[23] Even though voluntary manslaughter is not a lesser included offense of murder, the test for whether a judge should give a jury an instruction on voluntary manslaughter when a defendant is charged with murder is the same test to be applied as when an instruction on a lesser included offense is sought.[24]
 {¶ 45} Thus, a defendant charged with murder is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter.[25]
 {¶ 46} When the evidence presented at trial regarding a lesser included offense or inferior-degree offense meets this test, the trial judge must instruct the jury on the lesser or inferior-degree offense.[26] On the other hand, when the evidence presented at trial does not meet this test, a charge on the lesser included or inferior-degree offense is not required.[27]
 {¶ 47} In the instant case, the evidence presented warranted an instruction on voluntary manslaughter. All of the key eyewitnesses testified to the victim, King, fighting with Brooks. Sanford, Sanders, and Adams all testified that King and Brooks were grappling and struggling just prior to hearing a gunshot. Further, Brooks' written statement to the police confirmed that he and King were involved in a fight prior to the shooting. Because the killing occurred during a physical fight, an instruction on voluntary manslaughter was warranted. Based on the evidence presented, the trial court did not abuse its discretion by giving a jury instruction on voluntary manslaughter. Accordingly, this subclaim lacks merit.
 {¶ 48} In the second subclaim, Brooks argues the trial court erred by failing to instruct the jury as requested on the defense of accident in violation of the Fourteenth Amendment. We disagree.
 {¶ 49} An accident is that which is unintentional and unwilled and implies a lack of criminal culpability.[28] An accident will be found only if the defendant's actions or the resulting injury were a mere physical happening or event, out of the order of things and not reasonably anticipated or foreseen as a natural or probable result of a lawful act.[29] The defense of accident is not an affirmative defense, but is tantamount to a denial that an unlawful act was committed; it is not a justification for the defendant's admitted conduct.[30] Absent evidence in the record, the trial court need not instruct the jury with regard to accident.[31]
 {¶ 50} Here, Brooks requested an instruction on accident, which was denied over trial counsel's objection. At trial, the State's theory of the case was that Brooks shot King during the fight. However, Brooks argued he did not shoot King and denied throughout that he even possessed a gun. Having denied shooting the victim or possessing a gun, Brooks is estopped from claiming it was an accident. Therefore, we cannot find that the trial court abused its discretion in failing to issue an instruction on accident because the evidence did not support such an instruction. Accordingly, this subclaim lacks merit.
 {¶ 51} In the third and fourth subclaims, Brooks argues the trial court erred by failing to give jury instructions on negligent homicide and on reckless homicide. We disagree.
 {¶ 52} Our disposition of the second subclaim of this assigned error, renders these two issues moot. As stated previously, Brooks maintained that he never shot King and did not have a gun. Thus, an instruction that the shooting was negligent or reckless was inappropriate. Accordingly, these two subclaims lack merit.
 {¶ 53} In the fifth subclaim, Brooks argues the trial court erred when it gave a modified Howard charge, in violation of the Fourteenth
Amendment, when the jury indicated it was deadlocked. We disagree.
 {¶ 54} It is a well-settled principle that the law encourages jurors to agree, not to deadlock, and a court may urge a jury to make a reasonable effort to reach a verdict.[32] A trial court should issue the Howard charge when it determines the jury is deadlocked in its decision; however, no bright line exists to determine when a jury is deadlocked and when the supplemental charge should be read to the jury.[33]
 {¶ 55} In State v. Howard,[34] the Ohio Supreme Court rejected the traditional charge to deadlocked juries as set forth in the early case ofState v. Allen,[35] finding the Allen charge was unduly coercive to members of the jury in the minority position. Thus, the Supreme Court supplanted the Allen charge with the Howard charge, which asks each juror to review his or her own position.
 {¶ 56} In the instant case, the trial court gave the Howard charge after the jury announced they were at an impasse regarding the verdict and needed instructions on how to proceed. The instruction was given the same day the jury received the matter for deliberations. Brooks has failed to provide evidence that the Howard charge was prejudicial. To the contrary, the trial court merely encouraged the jury to reach a verdict in a manner well within the spirit of our judicial system. As such, we find no error and overrule Brooks' third assigned error.
 INEFFECTIVE ASSISTANCE OF COUNSEL — SENTENCING {¶ 57} In the fourth assigned error, Brooks raises six subclaims relating to ineffective assistance of counsel and sentencing. We first address the issues relating to ineffective assistance of counsel.
 {¶ 58} In the first subclaim, Brooks argues counsel was ineffective for failing to request a jury instruction concerning the fact that appellant turned himself into the authorities. We disagree.
 {¶ 59} In evaluating whether a petitioner has been denied his Sixth
Amendment right to effective assistance of counsel, the ultimate query is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done."[36]
 {¶ 60} In order to prevail on a claim of ineffective assistance of counsel, the petitioner must show trial counsel's performance fell below an objective standard of reasonableness and such performance resulted in undue prejudice.[37] In this regard, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumed competent.[38] An essential element of an ineffective assistance of counsel claim is a showing that, but for trial counsel's alleged errors, there is a substantial probability that the outcome of the trial would have been different.[39]
 {¶ 61} Here, Brooks complains that the State requested and received the standard instruction on flight and how it may be indicative of guilt. Brooks contends that defense counsel should have requested an instruction on how turning one's self into the authorities may be used to negate evidence of guilt. Brooks admits that the Ohio Supreme Court has repeatedly upheld the use of an instruction on flight.[40] However, Brooks has cited no authority to support his notion that turning one's self into authorities may be used to negate evidence of guilt. As such, this claim lacks merit.
 {¶ 62} In the second subclaim, Brooks argues counsel was ineffective for failing to object to the court's conclusion at sentencing that he maintained his innocence and showed no remorse. Further, that the trial court then used Brooks' apparent lack of remorse as a factor in his sentence. We disagree.
 {¶ 63} Pursuant to R.C. 2929.12(D)(5), the trial court may consider a defendant's lack of remorse as an indication of the likelihood that he or she will commit future crimes.[41] It is well established that the trial court is in the best position to address the sincerity and genuineness of the defendant's statements and the statements of others on his behalf.[42] As a result, the trial court did not abuse its discretion by considering Brooks to be lacking in general remorse for his crimes. Consequently, counsel was not ineffective for failing to object. Accordingly, this claim lacks merit.
 {¶ 64} We also note, the cumulative effect of the perceived errors is not so serious that counsel was not functioning as "counsel guaranteed the defendant by the Sixth Amendment."[43]
 {¶ 65} In the third subclaim, Brooks argues the trial court failed to comply with R.C. 2929.11(B) and State v. Comer,[44] when it failed to insure that the sentence imposed was consistent with similar sentences for similar offenders. We disagree.
 {¶ 66} R.C. 2929.11(B) provides:
"A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."
 {¶ 67} The goal of felony sentencing pursuant to R.C. 2929.11(B) is to achieve consistency, not uniformity.[45] R.C. 2929.11(B) does not impose an affirmative duty on the court to calibrate sentences in accord with the other terms of incarceration being imposed within a county, within an appellate district or within the state. Rather, this is a guide for a sentencing judge to follow in conformity with the overriding purpose of felony sentencing.[46]
 {¶ 68} Here, Brooks failed to illustrate, at the trial court level or in this appeal, that similarly situated offenders were sentenced differently than he was. There is nothing in the record that would indicate that the imposed sentence is either inconsistent with or disproportionate to sentences that have been imposed on similar offenders who have committed similar offenses. Accordingly, this claim lacks merit.
 {¶ 69} In the fourth subclaim, Brooks argues the trial court failed to make the requisite findings to impose consecutive sentences. We disagree.
 {¶ 70} R.C. 2929.14 authorizes the imposition of consecutive sentences only when the trial court concludes that the sentence is (1) necessary to protect the public from future crime or to punish the offender, (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) the court finds one of the following: (a) the crimes were committed while awaiting trial or sentencing, under sanction or under post-release control, (b) the harm caused by multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of the offense, or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime.[47]
 {¶ 71} Imposing consecutive prison terms for multiple convictions, therefore, is appropriate upon making certain findings as enumerated in this statute. When the trial court does so, however, it must state these findings, and its reasons for those findings, on the record.[48]
 {¶ 72} Here, the trial court adhered to this rule. The following excerpt is from the record:
"This court finds that you have no remorse for — for this murder. The court further finds that you've previously been found guilty in this court of a criminal offense and was presently under a court sanction when this offense was committed.
"The court further finds that you pose a continuing threat to the community in light of the conduct that you've engaged in and the description of your actions throughout these proceedings.
"The court does find that the shortest prison term would demean the seriousness of the offender's conduct and will not adequately protect the public from future crimes by the offender.
"The court further finds that the harm caused was so great or unusual that no single prison term for any of the offenses adequately reflects the seriousness of the offender's conduct and that the harm was so great or unusual that the maximum sentence for a single offense would not be commensurate with the seriousness of the offender's conduct and it's impact on the victim. Therefore, the court does find that consecutive sentences are necessary in this case and it will be so ordered."[49]
 {¶ 73} A review of the sentencing transcript reveals that the trial court clearly made the requisite findings required by R.C. 2929.14(E)(4) in imposing consecutive sentences. The trial court also set forth its reasons in support of the sentence, which included its recitation of the seriousness and recidivism factors pursuant to R.C. 2929.12. We find the trial court imposed consecutive sentences in accordance with R.C.2929.14(E)(4) and gave sufficient reasons for imposing the sentence.
 {¶ 74} Brooks also raised at oral argument that his sentence violated the U.S. Supreme Court's decision in Blakely v. Washington.[50] This court addressed this issue in its en banc decision of State v. Lett.[51]
In Lett, we held that R.C. 2929.14(C) and (E), which govern the imposition of maximum and consecutive sentences, do not implicate the Sixth
Amendment as construed in Blakely. Therefore, in conformity with that opinion, we reject Brooks' contention. Accordingly, this subclaim lacks merit.
 {¶ 75} In the fifth subclaim, Brooks argues the trial court violated R.C. 2967.28, when it failed to inform him that post-release control was part of the sentence. We agree.
 {¶ 76} In Woods v. Telb,[52] the Supreme Court of Ohio held that pursuant to R.C. 2967.28(B) and (C), a trial court must inform the defendant at sentencing or at the time of a plea hearing that post-release control is part of the defendant's sentence. This, the trial court failed to do. The trial court did, however, indicate in its journal entry that it had imposed post release control as part of Brooks' sentence.
 {¶ 77} Because a trial court has a statutory duty to provide notice of post-release control at the sentencing hearing, any sentence imposed without such notification is contrary to law.[53] As a general rule, if an appellate court determines that a sentence is clearly and convincingly contrary to law, it may remand for resentencing.[54] Furthermore, where a sentence is void because it does not contain a statutorily mandated term, the proper remedy is, likewise, to resentence the defendant.[55]
 {¶ 78} Accordingly, when a trial court fails to notify an offender about post-release control at the sentencing hearing, but incorporates that notice into its journal entry imposing sentence, it fails to comply with the mandatory provisions of R.C. 2929.19(B)(3)(c) and (d), and, therefore, the sentence must be vacated and the matter remanded to the trial court for resentencing.
 {¶ 79} Therefore, we sustain Brooks' fifth subclaim.
 {¶ 80} In the sixth subclaim, Brooks argues the trial court erred when it imposed a $20,000 fine on an indigent defendant. We agree.
 {¶ 81} R.C. 2929.18 authorizes a trial court to impose financial sanctions upon felony offenders. Before imposing a financial sanction under R.C. 2929.18, the trial court shall consider the offender's present and future ability to pay the amount of the sanction or fine.[56] A trial court that imposes a financial sanction upon an offender may hold a hearing on the offender's ability to pay fines or restitution, but a hearing is not required.[57] As with other aspects of a criminal sentence, an appellate court cannot modify a financial sanction unless it finds by clear and convincing evidence that it is not supported by the record or is contrary to law.[58]
 {¶ 82} Here, the trial court imposed the maximum fine of $20,000 for the manslaughter conviction. However, the record indicated that Brooks was twenty-one years old, was declared indigent at his arraignment, and was declared indigent for purposes of this appeal. Further, the record reveals Brooks had a limited education, a low intelligence quotient, and a lower than normal ability to function.
 {¶ 83} Based on the foregoing, we conclude that Brooks' future earning potential was limited at best. Thus, the trial court's imposition of a $20,000 fine was inappropriate under the circumstances. Accordingly, we find merit to this subclaim and vacate Brooks' fine.
Judgment affirmed in part and reversed in part.
It is ordered that appellant and appellee share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J., and McMonagle, J., concur. clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
 APPENDIX Assignments of Error
 "I. THE TRIAL COURT ERRED IN FAILING TO DISMISS THE CHARGE OF HAVING AWEAPON WHILE UNDER A DISABILITY UNDER R.C. 2923.13."
 "II. THE TRIAL COURT ERRED IN DISMISSING A JUROR FOR CAUSE (OVEROBJECTION) IN VIOLATION OF CRIM.R. 24 AND THE SIXTH AND FOURTEENTHAMENDMENTS OF THE U.S. CONSTITUTION."
 "III.(A)THE TRIAL COURT ERRED IN GIVING A VOLUNTARY MANSLAUGHTERINSTRUCTION AT THE REQUEST OF THE STATE AND IMPOSING AN AFFIRMATIVEDEFENSE ON THE APPELLANT WHEN HE DENIED SHOOTING THE VICTIM IN VIOLATIONOF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION.
 (B) The trial court erred in failing to instruct the jury, at theappellant's request, on the defense of accident in violation of theFourteenth Amendment.
 (C) The trial court erred in failing to give a jury instruction onnegligent homicide as requested by appellant.
 (D) The trial court erred in failing to give a jury instruction onreckless homicide as requested by appellant.
 (E) Counsel was ineffective when he failed to request a juryinstruction concerning the fact that appellant turned himself into theauthorities.
 (F) The trial court erred when it gave a modified Howard charge whenthe jury indicated that it was deadlocked in violation of the FourteenthAmendment."
 "IV. (A) Counsel was ineffective when he failed to provide informationto the trial court that the cumulative sentence of 13 years violatedR.C. 2929.11(B), State v. Comer, 99 Ohio St.3d 463, para 10 12 andState v. Lyons, 2002 Ohio 3424.
 (B) Counsel was ineffective when he failed to object to the court'sconclusion at sentencing that since the appellant maintained hisinnocence that he showed no remorse and the court committed plain errorin using his lack of remorse as a factor in his sentence.
 (C) The trial court failed to comply with R.C. 2929.11(B) and State v.Comer supra, when it failed to insure that the sentence imposed wasconsistent with similar sentences for similar offenders.
 (D) The trial court's findings used to support the sentence are notsupported by the record and are insufficient to support consecutivesentences.
 (E) The trial court violated R.C. 2967.28, Woods V. Telb (200),89 Ohio St.3d 504 Syl. 2, when it failed to inform the appellant thatpost release control was part of the sentence.
 (F) The trial court erred when it imposed a $20,000 fine and costs onan appellant without considering his present and future ability to paycontrary to R.C. 2929.19(B)(6) and counsel was ineffective for failing toobject to such fine and costs."
[1] See Appendix.
[2] Tr. at 500.
[3] Tr. at 980.
[4] State v. Holloway (Feb. 13, 1998), 1st App. Dist. No. C-970067, citing, State v. Kelly (June 16, 1982), 1st App. Dist. No. C-810571;State v. Gibson (1993), 89 Ohio App.3d 188; State v. Thomas (Oct. 11, 1996), 11th Dist. No. 95-T-5253; State v. Putnam (Dec. 5, 1994), 5th
Dist. No. 94CA00051.
[5] Id.
[6] State v. Gibson (1993), 89 Ohio App.3d 188.
[7] State v. Williams (1983), 6 Ohio St.3d 281, 288.
[8] R.C. 2313.43. See also, State v. Allard (1996), 75 Ohio St. 3d 482,495.
[9] State v. Tyler (1990), 50 Ohio St.3d 24; State v. Williams (1997),79 Ohio St.3d 1.
[10] State v. Adams (1980), 62 Ohio St.2d 151, 57.
[11] Tr. at 305.
[12] Tr. at 315.
[13] (May 11, 1995), Cuyahoga App. No. 67153.
[14] Wainwright v. Witt (1985), 469 U.S. 412, 426, 105 S.Ct. 844, 853,83 L.Ed.2d 841, 853.
[15] Id.
[16] Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12.
[17] Becker v. Lake Cty. Mem. Hosp. West (1990), 53 Ohio St.3d 202, 208.
[18] Riley v. Cincinnati (1976), 46 Ohio St.2d 287.
[19] Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591.
[20] Youssef v. Parr, Inc. (1990), 69 Ohio App.3d 679, 690.
[21] State v. Hardy (1971), 28 Ohio St.2d 89; State v. Price (1979),60 Ohio St.2d 136.
[22] State v. Wolons (1989), 44 Ohio St.3d 64.
[23] State v. Tyler (1990), 50 Ohio St.3d 24, 36, quoting State v.Deem (1988), 40 Ohio St.3d 205, 209. See also State v. Rhodes (1992),63 Ohio St.3d 613, 617.
[24] Tyler, supra, 50 Ohio St.3d at 37.
[25] Tyler, supra, at 37; Deem, supra, 40 Ohio St.3d at 211; State v.Thomas (1988), 40 Ohio St.3d 213, 216.
[26] State v. Loudermill (1965), 2 Ohio St.2d 79.
[27] State v. Kidder (1987), 32 Ohio St.3d 279, 282-283.
[28] State v. Ross (1999), 135 Ohio App.3d 262.
[29] State v. Bowling (Dec. 12, 2002), Cuyahoga App. No. 80777 at 10, 2002-Ohio-6818, P16, quoting State v. Glossip (Mar. 18, 1991), 12th Dist. No. CA90-07-138, (citing 4 Ohio Jury Instructions 75, Section 411.01[2]).
[30] Jones v. State (1894), 51 Ohio St. 331, 342; State v. Atterberry
(1997), 119 Ohio App.3d 443, 447, citing State v. Poole (1973),33 Ohio St.2d 18.
[31] State v. Long (1978), 53 Ohio St.2d 91; State v. Dale (1982),3 Ohio App.3d 431; State v. Hipkins (1982), 69 Ohio St.2d 80.
[32] State v. Long (Oct. 12, 2000), Cuyahoga App. No. 77272, citingState v. Sabbah (1982), 13 Ohio App.3d 124.
[33] Long, supra.
[34] (1989), 42 Ohio St.3d 18.
[35] (1896), 164 U.S. 492, 41 L.Ed. 528, 17 S. Ct. 154.
[36] State v. Hester (1976), 45 Ohio St.2d 71, paragraph four of the syllabus.
[37] State v. Madrigal (2000), 87 Ohio St.3d 378, 397, reconsideration denied (2000), 88 Ohio St.3d 1428, citing Strickland v. Washington
(1984), 466 U.S. 668, 687; State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990),497 U.S. 1011.
[38] State v. Calhoun (1999), 86 Ohio St.3d 279.
[39] State v. Lindsey (2000), 87 Ohio St.3d 479, 489, reconsideration denied (2000), 88 Ohio St.3d 1438.
[40] State v. Taylor (1997), 78 Ohio St.3d 15, 1997-Ohio-243.
[41] See, State v. Tennyson, 11th Dist. No. 98-L-219, 2001 Ohio 8814.
[42] State v. Bennett (June 21, 2000), 3rd Dist. No. 5-2000-05. See also State v. Sims (Dec. 9, 1998), 9th Dist. No. 19018.
[43] State v. Smith (1997), 80 Ohio St.3d 89, 112, citing Strickland,466 U.S. at 687.
[44] (2003), 99 Ohio St.3d 463.
[45] State v. Klepatzki (Mar. 27, 2003), Cuyahoga App. No. 81676, 2003-Ohio-1529, at P32.
[46] State v. McKinney (Dec. 26, 2002), Cuyahoga App. No. 80991, 2002-Ohio-7249.
[47] R.C. 2929.14(E)(4).
[48] See R.C. 2929.19(B)(2)(c). See, also, State v. Comer, supra at P20.
[49] Tr. at 1206-1207.
[50] (2004), U.S., 124 S.Ct. 2531, 159 L.Ed.2d 403.
[51] Cuyahoga App. Nos. 84707 and 84729.
[52] (2000), 89 Ohio St.3d 504.
[53] State v. Jordan (2004), 104 Ohio St.3d 21; 2004-Ohio-6085.
[54] See R.C. 2953.08(G)(2).
[55] See State v. Beasley (1984), 14 Ohio St.3d 74.
[56] R.C. 2929.19(B)(6).
[57] State v. Stevens (Sept. 21, 1998), Clinton App. No. CA98-01-001; R.C. 2929.18(E).
[58] See R.C. 2953.08(G); State v. Blanton (Mar. 19, 2001), Butler App. No. CA99-11-202.