JOURNAL ENTRY and OPINION
{¶ 1} Gerald Marinello appeals both his conviction pursuant to a bench trial for aggravated robbery with firearm specifications and his conviction pursuant to a jury trial for drug possession. The State of Ohio, acting as both an appellee and cross-appellant, appeals the decision of the trial court dismissing the repeat violent offender specification charge against Marinello. The two appeals have been consolidated for purposes of judicial economy. After a thorough review of the arguments presented and for reasons set forth below, we affirm the appellant's convictions, but find merit in the state's claim, therefore, we vacate the dismissal of the repeat violent offender specification.
 {¶ 2} Marinello ("appellant") was indicted on September 2, 2004 on three counts. Count one charged him with aggravated robbery, in violation of R.C. 2911.01, a felony in the first degree. Count two charged him with possession of a weapon while under a disability, in violation of R.C. 2923.13, a felony in the third degree (the disability being a conviction for murder on September 1, 1984 in case number CR-190886). Lastly, count three charged him with possession of drugs, in violation of R.C.2925.11, a felony in the fifth degree. The aggravated robbery charge against the appellant included one- and three-year firearm specifications, in accordance with R.C. 2941.141 and 2941.145
respectively, as well as a repeat violent offender specification and a notice of prior conviction, pursuant to R.C. 2929.13(F)(6).
 {¶ 3} On September 8, 2004, the appellant was arraigned and entered a plea of not guilty to all charges. He subsequently filed a motion to suppress as well as a motion to sever, and on January 4, 2005, the trial court held a motion hearing. After each party presented testimony, the trial court denied both of the appellant's pretrial motions. The appellant then petitioned the court for two separate trials, requesting a jury trial for count one of the indictment and a bench trial for counts two and three of the indictment.
 {¶ 4} The trial court granted the appellant's request for separate trials and, on January 4, 2005, the appellant's jury trial for aggravated robbery commenced. At the close of the prosecution's case, the appellant made a motion for judgment of acquittal, which was denied by the trial court. The appellant then renewed the motion at the close of his own case; however, the motion was again denied.
 {¶ 5} On January 11, 2005, after the jury retired to deliberate, a bench trial commenced on the appellant's remaining charges for drug possession and possession of a weapon while under disability. At the close of the bench trial, the appellant made a motion for judgment of acquittal, which the trial court denied. On January 13, 2005, the trial court found the appellant guilty of drug possession and not guilty of possessing a weapon while under a disability. On that same day, the jury returned its verdict finding the appellant guilty of aggravated robbery with firearm and repeat violent offender specifications.
 {¶ 6} Prior to sentencing, the appellant filed a motion for acquittal and a motion to dismiss the repeat violent offender specification. The trial court denied the appellant's motion for acquittal; however, it granted the appellant's motion to dismiss the repeat violent offender specification.
 {¶ 7} On February 7, 2005, the appellant was sentenced to three years for aggravated robbery, a mandatory one-year sentence for the first firearm specification, a mandatory three-year sentence for the second firearm specification, and six months for drug possession. The trial court merged the firearm specifications and ordered them to be served consecutively with the three-year term for aggravated robbery. The trial court further ordered that the appellant's six-month drug possession conviction be served concurrently with the aggravated robbery sentence.
 {¶ 8} The incident that gave rise to the charges against the appellant occurred on July 23, 2005. The victim, Enrique Muniz, was arriving home from work when he noticed that a man, later identified as the appellant, was standing on his tree lawn. Although Muniz did not recognize the appellant, he proceeded as he normally would on a trash collection day, exiting his vehicle and retrieving his trash cans from his tree lawn. As Muniz was retrieving his trash cans, the appellant made a comment to him about two homeless people who were arguing across the street. Muniz did not respond to the appellant and instead headed to his mailbox to check his mail. As Muniz checked his mail, he turned around and noticed that the appellant was standing directly behind him. The appellant told Muniz that he had a gun and then ordered Muniz at gunpoint to give him money. In response, Muniz grabbed a trash can and threw it at the appellant. Muniz then fled down the street, looking back at the appellant, who was still aiming the gun at him. Muniz ran into a store to call the police; however, the owners of the store did not speak English, and Muniz was forced to flee to his uncle's nearby home. Muniz called 911 from his uncle's house and soon after returned to his own home to find that the police had already responded to his call.
 {¶ 9} When Muniz spoke with the police officers about the incident, he described the appellant as a Caucasian male in his 50's with long grey hair. He told the police that the appellant was wearing blue jeans, a jean jacket and eyeglasses. Shortly after taking Muniz's statement, the police officers returned to Muniz's home with a man in the back of their patrol car that fit the description. Although the appellant was no longer wearing eyeglasses or a jean jacket, Muniz identified the man in the patrol car as the individual that had threatened him at gunpoint. Muniz indicated to the police that he was very sure about his identification because the incident occurred before dusk, and Muniz was able to see the appellant clearly.
 {¶ 10} The appellant was also identified by Terry Muniz, the victim's cousin, who lives in a home located across the street from the victim's home. Terry told the police officers that as he returned home from work on the evening of the incident, he noticed a man fitting the appellant's description walking in front of a health care center located nearby. Terry recalled watching the appellant because, in his opinion, he looked strange. Terry observed the appellant in front of the health care center for roughly half an hour as the appellant walked back and forth, only stopping to place his hands in his pockets and then place his fingers to his nose. Terry then witnessed the appellant as he stood on the tree lawn in front of the victim's home, as well as the altercation that took place between the appellant and the victim. After the victim fled, Terry witnessed the appellant place the gun in the back of his pants and flee. When the police arrived at the scene, Terry provided them with a description of the appellant, as well as the direction in which the appellant fled. Terry was also very sure about his identification because it was still light outside, and he was able to see the entire incident clearly. Both the victim and Terry provided the police with separate descriptions that led to the appellant's apprehension.
 {¶ 11} A third witness, Joe Muniz, the victim's uncle, also identified the appellant for the police. Joe told the police that he was familiar with the appellant because he frequented a laundromat where Joe used to work. Joe, who also lives across the street from the victim, told the police that he saw the appellant drive past the victim's home in a pickup truck on several occasions; he also observed the appellant look intently at the victim's driveway. Joe was able to identify the appellant as the man he observed driving past the victim's home.
 {¶ 12} When the appellant was apprehended by the police, he was positively identified by each of the witnesses. After identification, the police searched the appellant, on whom they discovered a blue pouch containing powdered cocaine in his left, front pants pocket. During their search, the police officers also found a set of keys that matched a pickup truck parked behind a grocery store within close proximity to the victim's home.
 {¶ 13} The appellant/cross-appellee (Marinello) now brings this appeal, asserting six assignments of error, while the appellee/cross-appellant (State of Ohio) asserts one assignment of error for our review.
 {¶ 14} "I. The trial court erred in overruling appellant's motion to sever charges for trial."
 {¶ 15} In his first assignment of error, appellant argues that the trial court erred when it overruled his motion to sever counts one and three of his indictment. More specifically, he asserts that the trial court's failure to sever the charges allowed the jury to hear evidence of his charge for drug possession during the course of his aggravated robbery trial. The appellant argues that he was prejudiced as a result of the trial court's actions.
 {¶ 16} He further argues that the trial court's introduction of his drug possession charge during his jury trial for aggravated robbery was improper; however, we cannot agree with his contentions. The drug possession charge against the appellant was key to the identification by witness Terry Muniz. Before the incident between the appellant and the victim took place, Terry observed the appellant as he stood in front of a local health care center. As Terry watched the appellant, he witnessed him place his hands in his pockets and bring them close to his nose, an action commonly associated with cocaine use. The fact that the police later discovered cocaine in the appellant's front pocket corroborated Terry's identification.
 {¶ 17} Evid.R. 404(B) provides guidance regarding the admission of other crimes at trial for purposes of identification, and states:
 {¶ 18} "Evidence of other acts is admissible if:
 {¶ 19} "(1) there is substantial proof that the alleged other acts were committed by the defendant, and;
 {¶ 20} "(2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 21} It is clear that the appellant's drug possession charge went directly to the issue of his identification. The charge was an essential link that was necessary to shed credibility upon Terry's identification. In light of Evid.R. 404(B), the trial court did not err in denying the appellant's motion to sever.
 {¶ 22} The trial court's actions were also proper in accordance with State v. Schaim, supra. In that case, it was determined that appellants must meet three requirements before they can prevail on a trial court's denial of a motion to sever.
 {¶ 23} To prevail on a claim that the trial court erred in denying a motion to sever, the defendant must affirmatively demonstrate that (1) his or her rights were prejudiced, (2) at the time of the motion to sever, the defendant provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) given the information provided to the court, it abused its discretion in refusing to separate the charges for trial. State v. Schaim, 65 Ohio St.3d 51, 59, 1992-Ohio-31, 600 N.E.2d 661, citing State v. Torres (1981),66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288.
 {¶ 24} It is clear from the arguments of the parties, as well as from the appellant's motion to sever, that the appellant did not meet the necessary requirements. Although his motion to sever presented arguments in favor of severance, the appellant failed to affirmatively demonstrate that his rights were prejudiced. He argues that introduction of his drug possession charge placed an impression of guilt in the minds of jurors; however, he offers no argument strong enough to counter the assertion that evidence of the drug possession charge was introduced for the limited purpose of identification.
 {¶ 25} Witness testimony is often crucial in proving the elements of a crime to a jury. Frequently jurors hang their decision upon the credibility of witnesses and identifications. This case is no exception. Terry Muniz's identification of the appellant was essential to the prosecution's case, and admission of the evidence related to the cocaine found on the appellant the day of the incident was essential to the credibility of Terry's identification. The drug possession charge was carefully admitted so that jurors would consider it for the limited purpose of identification, rather than criminal propensity. Although it is a difficult decision for a trial court to expose jurors to such information, as a fact finder it is a juror's duty to evaluate evidence in an objective fashion, and the court must place its faith in jurors to uphold that duty. Accordingly, we find that the trial court did not err when it denied the appellant's motion to sever and allowed evidence of the appellant's drug possession charge to be admitted for purposes of identification. Thus, the appellant's first assignment of error is without merit.
 {¶ 26} "II. The trial court erred when it overruled appellant's motion to suppress identification testimony."
 {¶ 27} In his second assignment of error, the appellant argues that the trial court erred when it overruled his motion to suppress identification testimony. He asserts that the identification procedures used by the police were unduly suggestive and produced unreliable pretrial and in-court identification. Accordingly, the appellant argues that the identifications should have been excluded.
 {¶ 28} Where a witness has been confronted by a suspect before trial, that witness' identification of the suspect will be suppressed if the confrontation procedure was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances. Manson v.Brathwaite (1977), 432 U.S. 98; State v. Brown (1988),38 Ohio St.3d 305. The defendant has the burden to show the court that the identification procedures were unnecessarily suggestive.State v. Sims (1984), 13 Ohio App.3d 287.
 {¶ 29} In State v. Haley (1994), 93 Ohio App.3d 71, 76, the court stated:
 {¶ 30} "The threshold question is whether the photo identification is impermissibly suggestive. All identification processes are inherently suggestive. Due process is violated only when the process is so impermissibly suggestive that the identification is unreliable in that there exists a substantial likelihood of irreparable misidentification."
 {¶ 31} To this end, this court held in State v. Byarse
(Sept. 4, 1997), Cuyahoga App. No. 70282:
 {¶ 32} "When defendant is identified at trial following a pretrial identification by photograph, the defendant's conviction will be set aside if the photographs are `so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' Simmons v. United States
(1968), 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247. Suggestiveness depends upon several factors, including the size of the array, its manner of presentation, and its contents.Reese v. Fulcomer (C.A. 3, 1991), 946 F.2d 247, 260. Stated otherwise, the test is `whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit.' Jarrett v.Headly (C.A. 2d. 1986), 802 F.2d 34, 41." See, also, State v.Barnett (1990), 67 Ohio App.3d 760, 767.
 {¶ 33} Finally, although the identification procedure may have contained notable flaws, this factor does not, per se, preclude the admissibility of the identification. State v.Merrill (1984), 22 Ohio App.3d 119, 121; State v. Moody
(1978), 55 Ohio St.2d 64, 67. Rather, the focus then shifts to reliability, i.e., whether the out-of-court suggestive procedure created a very substantial likelihood of misidentification.Simmons v. United States (1968), 390 U.S. 377.
 {¶ 34} Here, the appellant argues that the identification was unnecessarily suggestive because he was the only individual apprehended by the police and shown to witnesses. Although the appellant was the only individual implicated in the crime, each witness had an opportunity to fully observe the appellant and was sure that the appellant was the individual they had observed. The victim saw the appellant face-to-face while he was being threatened with a gun, and he expressed to the police that he was positive about his identification because the incident occurred before dusk, giving him a clear view of the appellant. Terry Muniz saw the appellant on two occasions the day of the incident, once while the appellant stood in front of the health care center and a second time as the incident unfolded on the victim's tree lawn. Terry also expressed to the police that he was sure about his identification because, the incident having occurred before dusk, he could see the appellant clearly. A third witness, Joe Muniz, did not see the altercation between the appellant and the victim, but he did witness the appellant drive by the victim's home on several occasions and was sure of his identification because the appellant was a patron at a business where Joe had once worked. Each witness saw the appellant clearly and was able to give a description to the police that was consistent with the appellant's physical appearance.
 {¶ 35} Time also played a factor in this case with respect to identification of the appellant. The appellant was arrested only minutes after the witnesses provided the police with a description and was apprehended within a close vicinity of the victim's home. The fact that Terry provided the police with the direction in which the appellant fled added additional support to the appellant's capture. Under the totality of the circumstances, the identifications were sound, and the police conduct was not unreasonably suggestive.
 {¶ 36} The appellant also asserts that the witness identifications were inconsistent. He argues that witnesses described him as wearing a jean jacket and glasses whereas, when he was arrested by the police, he was wearing a light colored shirt and was not wearing glasses. Although there appear to be some discrepancies with respect to the exact identification of the appellant's clothing, the fact remains that both the victim and Terry Muniz told the police that the appellant was a Caucasian male with long, grey hair, in his fifties, and wearing blue jeans. According to the record, the police officers stated that, in their experience, it was not unusual for a suspect to discard clothing items such as a jacket or glasses to avoid detection.
 {¶ 37} The witnesses' identifications were consistent with each other and were consistent with the appellant's physical description. The fact that the witnesses gave separate identifications to the police, coupled with the appellant's unique physical characteristic of long grey hair, also adds to the credibility of the identifications. Thus, the identification was not unreasonably suggestive, and the trial court did not err when it denied the appellant's motion to suppress. Accordingly, the appellant's second assignment of error is without merit.
 {¶ 38} "III. Plain error occurred with the admission of unfairly prejudicial evidence in violation of appellant's rights under Article I, Section 16 of the Ohio Constitution and theFourteenth Amendment to the United States Constitution."
 {¶ 39} Here the appellant argues that the trial court committed plain error when it admitted unfairly prejudicial evidence in violation of the appellant's constitutional rights. Specifically, he asserts that evidence regarding his drug possession charge was improperly admitted during his aggravated robbery trial. The appellant argues that the drug possession charge served as evidence of a prior bad act and was used to show that he was in conformity with such criminal behavior in the present case.
 {¶ 40} We note that the appellant failed to object to any of the testimony regarding the above stated evidence; therefore, in the absence of objection, any error is deemed to have been waived unless it constitutes plain error. To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v. Tichon, (1995), 102 Ohio App.3d 758,767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell, (1996), 75 Ohio St.3d 163,166, 661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips
(1995), 74 Ohio St.3d 72, 83, 656 N.E.2d 643.
 {¶ 41} The appellant relies upon Crim.R. 52(B) as support for his argument that the trial court's actions constituted plain error. Crim.R. 52(b) governs plain error and provides:
 {¶ 42} "(B) Plain error
 {¶ 43} "Plain error or defects affecting substantial right may be noticed although they were not brought to the attention of the court."
 {¶ 44} After a review of the appellant's arguments and the applicable rule, we do not agree that the trial court committed plain error. The appellant's conviction did not rest solely upon the admission of his drug possession charge. The crux of the prosecution's case was the three solid identifications from the victim, who was threatened at gunpoint; Terry Muniz, who witnessed the appellant on two different occasions the day of the incident; and Joe Muniz, who observed the appellant drive by the victim's home.
 {¶ 45} In order to sustain an argument on the basis of plain error, an appellant must show that, but for the trial court's error, the outcome of the trial would have differed. The appellant has failed to satisfy that burden here. Thus, his third assignment of error is without merit.
 {¶ 46} "IV. Appellant was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when his attorney failed to object to unfairly prejudicial evidence."
 {¶ 47} Here the appellant argues that he was denied his right to effective assistance of counsel when his attorney failed to object to the admission of his drug possession charge during his aggravated robbery trial. He argues that if this court finds that the trial court's admission of prejudicial evidence was not plain error, as argued in his third assignment of error, this court must find that his counsel was ineffective for failing to object to the admission of that evidence.
 {¶ 48} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington
(1984), 466 U.S. 668, State v. Brooks (1986),25 Ohio St.3d 144.
 {¶ 49} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner.State v. Smith (1985), 17 Ohio St.3d 98; Vaughn v. Maxwell
(1965), 2 Ohio St.2d 299.
 {¶ 50} The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley
(1989), 42 Ohio St.3d 136, that:
 {¶ 51} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle
(1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498,358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington
(1984), 466 U.S. 668.
 {¶ 52} Although the appellant argues that, but for his attorney's failure to object, the outcome of his trial would have differed, this court cannot agree. As held in the appellant's third assignment of error, his conviction did not rest upon the evidence of drug possession alone. Three credible witnesses, who had an opportunity to observe the appellant, implicated him as the individual who committed the crime. The victim and Terry Muniz also gave the police consistent physical descriptions of the appellant out of each other's presence. Although evidence of the appellant's drug possession charge bolstered Terry Muniz's identification, the fact remains that three witnesses positively identified the appellant. Thus, his counsel was not ineffective when she failed to object, and the appellant's fourth assignment of error is without merit.
 {¶ 53} "V. Appellant has been deprived of his liberty without due process of law by his convictions for aggravated robbery and firearm specifications, which were not supported by sufficient evidence to prove his guilt beyond a reasonable doubt."
 {¶ 54} The appellant argues that his conviction for aggravated robbery with firearm specifications was not supported by sufficient evidence to prove his guilt beyond a reasonable doubt. He asserts that the trial court's failure to direct a verdict for acquittal after the jury's guilty verdict constituted a denial of due process under both the state and federal constitutions.
 {¶ 55} In State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, the Ohio Supreme Court reexamined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 56} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at ¶ 2 of the syllabus.
 {¶ 57} More recently, in State v. Thompkins (1997),78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court stated the following with regard to "sufficiency" as opposed to "manifest weight" of the evidence:
 {¶ 58} "With respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955),162 Ohio St. 486, 55 Ohio Op. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31,45, 102 [*387] S.Ct. 2211, 2220, 72 L.Ed. 2d 652, 663, citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed. 2d 560." Id. at 386-387.
 {¶ 59} Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case. Cohen v. Lamko (1984), 10 Ohio St.3d 167,462 N.E.2d 407.
 {¶ 60} The appellant argues that the prosecution did not present sufficient evidence that he was in possession of an operable firearm because the firearm was never recovered and the only proof of its existence was derived from the witnesses' accounts. R.C. 2911.01 governs aggravated robbery and states:
 {¶ 61} "(A) No person in committing to attempt a theft offense, as defined in section 2913.01 of the revised code, or in fleeing immediately after such attempt or offense, shall do either of the following:
 {¶ 62} "(1) have a deadly weapon or dangerous ordnance as defined in section 2923.22 of the revised code, on or about his person or under his control;
 {¶ 63} "(2) inflict, or attempt to inflict serious physical harm on another.
 {¶ 64} "(B) Whoever violates ths section is guilty of aggravated robbery, an aggravated felony of the first degree."
 {¶ 65} The appellant asserts that the victim's account of seeing him holding what looked like a gun, as well as Terry Muniz's observations from his home's distant vantage point, were not sufficient to support his conviction. This court does not agree. When looking at the evidence in its totality, it is reasonable that a trier of fact could find the appellant guilty of aggravated robbery with a firearm specification.
 {¶ 66} The victim testified that, as he turned to face the appellant, the appellant pointed a grey and brown gun at him and stated "give me your money, I got a gun." The victim also testified that he is familiar with guns and their physical characteristics because members of his family are the police officers. As the victim fled the scene, he specifically remembered looking back at the appellant who was still pointing the gun at him.
 {¶ 67} Witness Terry Muniz observed the entire exchange between the appellant and the victim, including when the appellant threatened the victim with a gun. Terry also testified that, as the victim fled, the appellant took the gun and placed it in the back of his pants. Although the gun was never recovered, the police testified that, in their experience, it is not unusual for a suspect to discard a gun in order to evade police detection.
 {¶ 68} Accordingly, we find that it was reasonable for the jury to conclude that the appellant was in possession of a firearm and intended to use that deadly weapon to carry out a theft offense. Thus, the appellant's conviction was not against the sufficiency of the evidence, and his fifth assignment of error is without merit.
 {¶ 69} "VI. Appellant's convictions for aggravated robbery and the firearm enhancement specifications were against the manifest weight of the evidence."
 {¶ 70} The appellant argues that his conviction for aggravated robbery with firearm specifications was against the manifest weight of the evidence. Specifically, he argues that the jury clearly lost its way in reaching a guilty verdict.
 {¶ 71} The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida, (1982) 457 U.S. 31, in which the court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
 {¶ 72} Upon application of the standards enunciated inTibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172,175 has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. TheMartin court stated:
 {¶ 73} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 74} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court in Statev. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442/64443, adopted the guidelines set forth in State v. Mattison (1985),23 Ohio App.3d 10, syllabus. These factors, which this court noted are in no way exhaustive, include: "1) Knowledge that even a reviewing court is not required to accept the incredible as true; 2) Whether evidence is uncontradicted; 3) Whether a witness was impeached; 4) Attention to what was not proved; 5) The certainty of the evidence; 6) The reliability of the evidence; 7) The extent to which a witness may have a personal interest to advance or defend their testimony; and 8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary." Id.; see State v. Moore, Cuyahoga App. No. 81876, 2003-Ohio-3526.
 {¶ 75} After a thorough review of the record, we find that the jury did not lose its way. The appellant argues that the prosecution did not produce credible evidence that he was in possession of an operable firearm, nor did it produce the actual firearm at trial; however, the fact still remains that two credible eye witnesses observed the appellant with a gun. In addition, the victim personally heard the appellant say "give me your money, I have a gun," as the appellant pointed the gun directly at him. As stated above in our review of assignment of error five, the police indicated that it is not uncommon for a suspect to rid himself of a weapon to avoid apprehension. The record shows that the appellant brandished a gun in such a fashion that it could reasonably be inferred that he intended to use it. The subsequent loss of the gun does not diminish that inference. The appellant's conviction was not against the manifest weight of the evidence. Witness identifications, coupled with the appellant's action and words on the day of the incident, more than supported his conviction for aggravated robbery with firearm specifications. Thus, the appellant's sixth assignment of error is without merit.
 {¶ 76} APPELLEE/CROSS APPELLANT'S ASSIGNMENT OF ERROR: "The trial court erred in dismissing the repeat violent offender specification"
 {¶ 77} The State of Ohio argues that the trial court erred when it dismissed the repeat violent offender specification against the appellant. They assert that the dismissal of the appellant's repeat violent offender specification violatesApprendi v. New Jersey (2000), 530 U.S. 466. This court agrees with the state's contentions.
 {¶ 78} Under R.C. 2929.01(DD), "`Repeat violent offender' means a person about whom both of the following apply:
 {¶ 79} "(1) The person has been convicted of or has pleaded guilty to, and is sentenced for committing, for complicity in committing, or for an attempt to commit, aggravated murder, murder, involuntary manslaughter, a felony of the first degree other than one set forth in Chapter 2925 of the Revised Code, a felony of the first degree set forth in Chapter 2925 of the Revised Code that involved an attempt to cause serious physical harm to a person or that resulted in serous physical harm to a person, or a felony of the second degree that involved an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person.
 {¶ 80} "(2) Either of the following applies:
 {¶ 81} "(a) The person previously was convicted of or pleaded guilty to, and previously served or, at the time of the offense was serving, a prison term, for any of the following:
 {¶ 82} "(i) Aggravated murder, murder, involuntary manslaughter, rape, felonious sexual penetration as it existed under section 2907.12 of the Revised Code prior to September 3, 1996, a felony of the first or second degree that resulted in the death of a person or in physical harm to a person, or complicity in or an attempt to commit any of those offenses;
 {¶ 83} "(ii) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense listed under division (DD)(2)(a)(i) of this section and that resulted in the death of a person or in physical harm to a person."
 {¶ 84} In Apprendi, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) Id. at 490.
 {¶ 85} In 2002, this court addressed the issue of whether Ohio's repeat violent offender statute was constitutional in light of Apprendi and a defendant's prior conviction. In Statev. Gates, Cuyahoga App. No. 78120, 2002-Ohio-4018, we held that "the Apprendi decision permitted a trial court to enhance a defendant's sentencing penalty `merely upon the establishment [of] the prior conviction.' Id. at 24.; accord, State v. Gates,
Cuyahoga App. No. 81628, 2003-Ohio-3224; State v. Adams, Lake App. No. 2003-L-110, 2005-Ohio-1107."[1]
 {¶ 86} In the present case, R.C. 2929.01(DD)(1) is satisfied. The appellant was convicted of aggravated robbery, a first degree felony, and his previous conviction was for murder, a violent offense pursuant to R.C. 2929.01(DD)(2)(a)(i). Since the appellant has a prior conviction for murder, he is a repeat violent offender, and the trial court was not required to make further findings in order to enhance his sentencing penalty.State v. Brumley, Butler App. No. CA2004-05-114,2005-Ohio-5768, (Because appellant was classified as a repeat violent offender on the basis of his prior murder conviction, the sentencing enhancement fell within the jury exception discussed in Apprendi).
 {¶ 87} For the foregoing reasons, the trial court erred when it dismissed defendant's repeat violent offender specification. Accordingly, the trial court's judgment of dismissal is vacated and this matter is remanded for resentencing consistent with this opinion.
Judgment accordingly.
This cause is affirmed in part, vacated in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., and Gallagher, J., concur.
[1] Contrary to the state's argument, we find no conflict between our conclusion in this case and our previous decisions inState v. Malcolm, Cuyahoga App. No. 85351, 2005-Ohio-4113 andState v. Sims, Cuyahoga App. No. 84090, 2005-Ohio-1978, neither of which addressed R.C. 2929.01(DD) and a defendant's prior murder conviction.