JOURNAL ENTRY AND OPINION
{¶ 1} Defendant appeals his conviction for the murder of his cousin, Jonathon McIntosh on December 17, 2004.
 {¶ 2} On the 17th, at approximately 1:00 p.m., McIntosh and his friend, Robert Wearren, were driving down E. 150th Street in the City of Cleveland, when McIntosh saw defendant in his own car traveling in the opposite direction. McIntosh pulled in front of defendant's car and forced him to stop.
 {¶ 3} McIntosh exited his car and walked up to the driver's side of defendant's car. An argument ensued between the two men. Witnesses saw defendant shoot McIntosh in the chest. Grabbing his chest, McIntosh ran and then fell to the ground. Defendant followed and shot McIntosh at least two more times. McIntosh was dead at the scene.
 {¶ 4} Defendant was indicted on one count of aggravated murder in violation of R.C. 2903.01. He was also indicted on two firearm specifications, R.C. 2941.145 and R.C. 2941.146, respectively. Following a jury trial, defendant was convicted of the lesser-included offense of murder and the two firearm specifications. He was sentenced to a prison term of twenty-three years to life.
 {¶ 5} Defendant filed this timely appeal, in which he asserts two assignments of error, the first of which states:
I. THE TRIAL COURT ERRED BY NOT INSTRUCTING THE JURY ON THE LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER.
 {¶ 6} Defendant argues there was sufficient evidence to instruct the jury on the lesser-included offense of voluntary manslaughter. Defendant claims that before he shot McIntosh to death, he was provoked into a state of sudden passion or rage.
 {¶ 7} On appeal, the issue is whether the trial court abused its discretion when it denied defendant's request to instruct the jury on the lesser-included offense of voluntary manslaughter.State v. Wolons (1989), 44 Ohio St.3d 64, 541 N.E.2d 443.
 {¶ 8} R.C. 2903.03(A), which defines voluntary manslaughter, provides: "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *." Voluntary manslaughter is an inferior degree of aggravated murder. Statev. Tyler (1990), 50 Ohio St.3d 24, 36, 553 N.E.2d 576.
 {¶ 9} An instruction on a lesser-included offense "is warranted only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. In making this determination, a trial court must view the evidence in a light most favorable to defendant." State v. Conway,108 Ohio St.3d 214, 2006-Ohio-791, ¶ 133, 842 N.E.2d 996.
Before giving an instruction on voluntary manslaughter in a murder case, the trial court must determine "whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." State v. Shane
(1992), 63 Ohio St.3d 630, 590 N.E.2d 272, paragraph one of the syllabus. The initial inquiry requires an objective standard: "For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." Id. at 635, 590 N.E.2d 272.
State v. Braden 98 Ohio St.3d 354, 2003-Ohio-1325, ¶ 68,785 N.E.2d 439; Conway, 2006-Ohio-791, ¶ 130; State v. Brooks,
Cuyahoga App. No. 83668, 2005-Ohio-3567, ¶ 44 — ¶ 46.
 {¶ 10} In the case at bar, defendant was indicted for aggravated murder. Along with instructing the jury on the offense of aggravated murder, the trial court also gave the jury an instruction on the lesser-included offense of murder. Defendant's request for an instruction on voluntary manslaughter was denied.
 {¶ 11} According to defendant, the record establishes that McIntosh was the initial aggressor. Not only did McIntosh cut off defendant's car, but he then exited his vehicle and began arguing with defendant. This series of events, defendant claims, prompted him into a sudden fit of passion or rage, which caused him to shoot McIntosh. We disagree.
 {¶ 12} Even though McIntosh had traces of cocaine in his system and was the initial aggressor, there is no evidence that he did anything towards defendant to justify defendant using deadly force. Jermaine Boykins and Lynniece Love, both eyewitnesses to the shooting, establish that, while standing beside defendant's car, McIntosh never pulled a gun or did anything other than argue and wave his arms around. There is no evidence that McIntosh did anything directly threatening towards defendant with his arms. Moreover, even though we do not know the exact nature of the argument between the two men, "words alone" usually do not constitute sufficient provocation to use deadly force. State v. Shane (1992), 63 Ohio St.3d 630,590 N.E.2d 272, paragraph two of the syllabus. Boykins further stated that at no time was defendant's vehicle unable to leave the premises.
 {¶ 13} Most fatal to defendant's claim that he was entitled to a jury instruction on voluntary manslaughter is the eyewitness testimony from Boykins, Love, and Gales. All three people testified consistently that, after being shot, McIntosh began to run away from defendant's vehicle. Instead of leaving the area or simply remaining in his car, defendant exited his vehicle in pursuit of McIntosh.
 {¶ 14} Once McIntosh was on the ground, defendant kicked him and stomped on him. Defendant then shot McIntosh at least two more times at close range. There is no evidence McIntosh ever had any opportunity to defend himself.
 {¶ 15} From the record before this court, we find no evidence that the trial court erred in denying defendant's request to instruct the jury on the offense of voluntary manslaughter. Defendant's first assignment of error is overruled.
II. THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 16} Defendant argues that his convictions are not supported by the manifest weight of the evidence. In determining whether a conviction is against the manifest weight of the evidence, the court on appeal applies the following test:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
State v. Marinello, Cuyahoga App. Nos. 86028 and 86113,2006-Ohio-282, ¶ 73, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. In a manifest weight determination, the reviewing court should consider the following factors.
"1) Knowledge that even a reviewing court is not required to accept the incredible as true; 2) Whether evidence is uncontradicted; 3) Whether a witness was impeached; 4) Attention to what was not proved; 5) The certainty of the evidence; 6) The reliability of the evidence; 7) The extent to which a witness may have a personal interest to advance or defend their testimony; and 8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary."
Marinello, ¶ 74, citing State v. Wilson, (June 9, 1994), Cuyahoga App. Nos. 64442/64443, 1994 Ohio App. LEXIS 2508, citingState v. Mattison (1985), 23 Ohio App.3d 10, 23 Ohio B. 43,490 N.E.2d 926, syllabus.
 {¶ 17} From the record of evidence adduced at trial, we are compelled to reject defendant's argument. A salesman from a sporting goods store testified from a receipt that on October 28, 2004, he sold to a person who signed as Pierre Yates and who was listed as five feet eight inches tall and weighing 178, a Hi-Point nine-millimeter gun with the serial number P 1226831. It was packaged in a cardboard box. The salesman identified a cardboard box found in defendant's vehicle as a box for a Hi-Point firearm. The box bore the same serial number listed on the sales receipt. From the glove compartment of this vehicle, furthermore, police recovered a purchase receipt for a Hi-Point nine-millimeter firearm.
 {¶ 18} The police found six spent casings: five near the body and one "on the street on the curb." They were each marked "Geco nine millimeter Luger." A forensic specialist stated it was possible the shell casings found at the scene could have been fired by a Hi-Point nine-millimeter gun, the same type of gun defendant bought.
 {¶ 19} From the vehicle defendant had been driving, the police recovered eight live rounds of ammunition on the front passenger's seat, one live round on the floor to the right of the driver's seat, and another round from under the front passenger's seat. This ammunition was for a nine-millimeter weapon (Tr. 346-9)and all bore the Geco head stamp. Thus the type of ammunition found in defendant's vehicle was the same type as the casings found around the victim's body.
 {¶ 20} There was also forensic evidence of gunshot residue found on the defendant's left hand. Moreover, blood found on the car defendant drove, specifically from the interior and exterior handles on the driver's side, was found by DNA analysis, with a reasonable degree of scientific certainty, to consist of the victim's blood, mixed with that of defendant. The victim's blood was also on a coat found in the trunk of that car. This objective evidence, in addition to the testimony of Boykin, Love, and Gale, was sufficient to convict defendant, who did not provide any rebuttal through any defense witnesses.
 {¶ 21} Nevertheless, defendant claims that his murder conviction[1] must be reversed because Wearren's identification of him as the person who shot and killed McIntosh is unreliable. To the contrary, not only is Wearren's account of the events on the 17th consistent with the testimony of the other witnesses, it is supported by the forensic and other circumstantial evidence presented by the state.
 {¶ 22} Wearren said he heard six shots.[2] This report is consistent with forensic evidence that established McIntosh died from five gunshot wounds. Police recovered five spent bullet casings around McIntosh's body and one casing from the street.
 {¶ 23} Defendant further claims that Wearren's testimony was not credible because he mistakenly identified the gun defendant used to kill McIntosh as a nine-millimeter "Glock." What Wearren said was, "I think it was a Glock nine handgun because it was really big and all black." (Tr. 457) A forensic specialist testified that the Glock and Hi-Point "have a similar appearance" and are "frequently confused." Tr. 567-8. Wearren's misnaming the gun is of little significance, therefore.
 {¶ 24} Defendant also argues that he was wrongly identified as the shooter because the police never recovered either the gun used to kill McIntosh or the red jacket Wearren and Boykins described and because defendant did not have McIntosh's DNA on him, although the gunshots to McIntosh were made at close range. He also points out that a half-hour after the shooting he was involved in a motor vehicle accident, at which time he was videotaped as wearing a tan-colored jacket, not a red one.
 {¶ 25} We reject these arguments. First, defendant could have discarded the gun anywhere between East 150th Street, where the shooting occurred, and the location of the accident in University Heights — a distance too far to locate a discarded gun. Finally, a coat found in the car that defendant was driving had tested positive for McIntosh's blood. That witnesses could be confused about the color of the coat is unimportant compared to the strength of the total evidence.
 {¶ 26} Accordingly, after reviewing the entire record, weighing the evidence and all reasonable inferences, along with considering the credibility of the witnesses, we conclude that the jury did not lose its way in concluding defendant killed McIntosh. The manifest weight of the evidence clearly supports the jury's determination that defendant committed the offense of murder against McIntosh.
 {¶ 27} Defendant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Kilbane, J., concur.
[1] Defendant does not challenge his convictions on the two firearm specifications. Accordingly, we do not address them here.
[2] Wearren said he heard a gunshot (Tr. 427) and from the rear window of the car saw defendant holding a gun "out the window shooting at him" (Tr. 431). Wearren exited the car (Tr. 428). He then saw defendant chase the victim behind the house (Tr. 429). At that time he heard four shots (Tr. 439). Wearren saw the gun again when defendant walked back from behind the house, at which point they were twenty feet apart (Tr. 457-8).