OPINION
{¶ 1} Defendant-Appellant Lawrence Brightman, II, appeals from his convictions for Burglary and Receiving Stolen Property. On appeal Brightman primarily claims that his convictions are not supported by sufficient evidence and that they are against the manifest weight of the evidence. In relation to his Burglary conviction, Brightman also argues that the prosecutor committed misconduct; that his trial counsel was ineffective; and that he was denied a fair trial.
 {¶ 2} We conclude that Brightman's Burglary conviction is not supported by sufficient evidence because the State failed to offer evidence of the presence or likely presence of the victim specifically named in the indictment. However, his Receiving Stolen Property conviction is supported by sufficient evidence, and is not against the manifest weight of the evidence. Because we are vacating Brightman's Burglary conviction, his remaining assignments of error are moot, and we need not address their merits.
 I {¶ 3} On December 21, 2002 Centerville Police Officer Chad Eckenrode was conducting undercover surveillance near several condominium complexes. Using his night vision goggles, Eckenrode saw a man, later identified as Brightman, near a pond about 75 feet away. Brightman was wearing dark clothing and carrying a duffel bag. Eckenrode saw Brightman walk behind some pine trees and emerge a second later.
 {¶ 4} Eckenrode lowered his night vision goggles and could still see Brightman. The two made eye contact, and Brightman began to run away. Eckenrode yelled, "Police, stop", but Brighton ignored him. Eckenrode chased Brightman about 300 yards between complexes when he saw Brightman drop the duffel bag at the edge of a creek before trying to jump over it. Eckenrode caught Brightman another 100 yards later, in a wooded area on the other side of the creek.
 {¶ 5} Eckenrode ordered Brightman to the ground and handcuffed him before radioing to other officers for assistance. He patted Brightman down, but found no weapon. Brightman confirmed that he was alone and that he had a car parked in the area. Officer Lauofo arrived and put Brightman in his cruiser before transporting him to the Centerville Police Department for booking. When Lauofo later checked his cruiser to be sure that Brightman had left nothing in it, he found a small flashlight.
 {¶ 6} In the meantime Officer Eckenrode found the duffel bag that Brightman had abandoned at the creek. The bag was cold, but inside he found jewelry that was still warm and a digital camera. Eckenrode continued to retrace his steps until he found a unit at 7131 Fallen Oak Trace that had been broken into. A window had been forced open. He called for further backup, and Sergeant Levine responded. The officers entered through the open patio door. The inside of the unit was still warm. They found part of a fresh, muddy footprint in front of the opened window. There were signs of burglary throughout the unit.
 {¶ 7} Detective Matthew Brown was called to the scene where he conducted a walk-through of the unit and then went to the station to interview Brightman. There Brightman told Brown that an unknown person dropped him off in the area, that he had been on the back porch of the burglarized unit rummaging through the trash when he saw two men drop the duffel bag, which he picked up. However, Detective Brown had not seen trash cans on the porch when he was at the scene. Brightman also explained that he had run from Officer Eckenrode because he did not know who he was. When later confronted with the fact that a car registered in his wife's name was found 1,000 feet from the burglarized unit, Brightman admitted that he had driven himself to the area.
 {¶ 8} Police learned that the complainant, Anjanette Frye, was in Hawaii on vacation, so her father and her friend Paula Bartley, who was keeping an eye on the condo, responded to the police station and were able to identify some of the property found in the duffel bag as belonging to Ms. Frye. Bartley told the police that there were no signs of burglary when she had last checked the condo a couple of mornings earlier.
 {¶ 9} Brightman was indicted with one count of Burglary and one count of Receiving Stolen Property. The jury convicted Brightman as charged, and the trial court sentenced him to a six-year term of imprisonment for the Burglary conviction and to a concurrent one-year sentence for the Receiving Stolen Property conviction. Brightman now appeals.
 II {¶ 10} Brightman's first assignment of error is as follows:
 {¶ 11} "The appellant's conviction for Burglary (person present) is not supported by sufficient evidence and is against the manifest weight of the evidence."
 {¶ 12} Brightman's second assignment of error is as follows:
 {¶ 13} "The appellant's conviction for Receiving Stolen Property is not supported by sufficient evidence and is against the manifest weight of the evidence."
 {¶ 14} In his first two assignments of error, Brightman contests both the weight and sufficiency of the evidence as to both of his convictions. Two distinct standards apply to manifest weight and sufficiency of the evidence claims. "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented." State v. Hufnagel (Sept. 6, 1996), Montgomery App. No. 15563, citation omitted.
 {¶ 15} When reviewing a judgment under a manifest weight standard of review "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 16} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Hufnagel, supra, quoting State v. Jenks
(1991), 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 17} Brightman was convicted of Receiving Stolen Property, in violation of R.C. § 2913.51(A), which states, "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
 {¶ 18} Officer Eckenrode saw Brightman carrying the duffel bag that was later found to contain Frye's jewelry and camera, which were still warm despite the chill of the night. When Brightman saw Eckenrode, he ran, dropping the bag as he fled. Officers then found Frye's apartment just burglarized. Brightman lied to Detective Brown about being dropped off in the neighborhood by an unknown person, though his car was later found parked in the area. Brightman claimed to have been rummaging through trash cans on Frye's back porch, but there were no cans on the porch. Finally, he claimed to have merely picked up the duffel bag after it was dropped by two other men.
 {¶ 19} When the evidence is viewed in a light most favorable to the State, a rational trier of fact could have found sufficient evidence of Receiving Stolen Property was presented by the testimony of the officers to warrant presenting the charge to the jury. Moreover, the jury did not clearly lose its way in finding Brightman guilty of Receiving Stolen Property. Accordingly, Brightman's second assignment of error is overruled.
 {¶ 20} Brightman was also convicted of Burglary, in violation of R.C. § 2911.12(A)(2), which states in relevant part: "No person, by force, stealth, or deception, shall . . . [t]respass in an occupied structure . . . that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense."
 {¶ 21} The State could have indicted Brightman just on the words of the statute, since the State was only required to prove that a person was present or likely to be present. See, e.g., State v. Green (1984),18 Ohio App.3d 69, 480 N.E.2d 1128. Nevertheless, the State chose to specify in the indictment that the person present or likely to be present was the complainant, Anjanette Frye. At trial, the testimony revealed that Frye was vacationing in Hawaii at the time of the burglary and was neither present nor likely to be present in her Ohio home. Recognizing this difficulty, the State argued in closing that the person likely to have been present was Frye's friend, Paula Bartley, who was keeping an eye on the apartment. While this argument might carry the day if Frye had not been named in the indictment, it fails here because Bartley was not the one who was specified in the indictment as the person likely to have been present.[1]
 {¶ 22} The State could have asked the trial court to amend the indictment, because changing the person named in the indictment would not have changed the name or identity of the crime. State v. Owens (1975),51 Ohio App.3d 132, 149, 366 N.E.2d 1367. However, the State did not do so. As a result, in the her instructions to the jury, the trial judge submitted the charged offense to the jury on the basis that Frye was the person whom the jury must find to have been present or to have been likely to be present. Despite having argued in closing argument that Bartley was the one likely to have been present, the State did not object to the jury instructions. Therefore, there was insufficient evidence that Brightman burglarized Frye's home while Frye herself was present or likely to be present as stated in both the indictment and in the jury instructions. Because there is insufficient evidence in this record to support the charge of Burglary that was actually submitted to the jury, we must reverse Brightman's Burglary conviction, and order him discharged as to that offense.
 III {¶ 23} Brightman's third assignment of error is as follows:
 {¶ 24} "Appellant was denied a fair trial due to prosecutorial misconduct in arguing an unindicted crime."
 {¶ 25} Brightman's fourth assignment of error is as follows:
 {¶ 26} "The court erred in not ordering a mistrial when the prosecutor argued an unindicted crime to the jury."
 {¶ 27} Brightman's fifth assignment of error is as follows:
 {¶ 28} "Appellant's conviction must be reversed due to the ineffective assistance of counsel."
 {¶ 29} In his brief, Brightman addresses his remaining assignments of error to his Burglary conviction, only. Because we are sustaining Brightman's first assignment of error, and ordering Brightman discharged as to his Burglary conviction, his third, fourth, and fifth assignments of error are moot, and their merits need not be addressed.
 IV {¶ 30} Brightman's first assignment of error having been sustained as it relates to his Burglary conviction, his first and second assignments of error having been overruled as they relate to his Receiving Stolen Property conviction, and his third, fourth and fifth assignments of error having been overruled as moot, Brightman's conviction and sentence for Burglary is Reversed, and he is ordered discharged as to that offense; and Brightman's conviction and sentence for Receiving Stolen Property is Affirmed.
Wolff and Grady, JJ., concur.
[1] Brightman argues, with some justification, that even the specification of Bartley as the person likely to have been present would fail, because the evidence was that Bartley only infrequently checked the apartment while Frye was way. We need not decide this issue, since Frye, not Bartley, was specified as the person likely to have been present.