OPINION
{¶ 1} Jason Frock was found guilty by a jury in the Clark County Court of Common Pleas of burglary, aggravated burglary, and safecracking, and he was sentenced to consecutive sentences on these offenses. Frock appeals from his convictions and sentences.
 {¶ 2} The state's evidence established the following facts at trial.
 {¶ 3} The Grimpes lived at 10033 Sigler Road in New Carlisle. On March 3, 2004, Mrs. Grimpe came home from work during the afternoon and found that their house had been burglarized. A safe and some guns had been taken from the basement of the house. The Grimpes' letter carrier had seen a white car with 30 day tags, possibly a Chrysler, in the Grimpes' driveway within the hour prior to Mrs. Grimpe's arrival. The letter carrier had never seen the car at the house previously. As she continued her route in the neighborhood, the letter carrier saw the white car on the road a short time later with a large gray-green box in the truck that prevented the trunk from closing. This box matched the description of the Grimpes' safe. The police later recovered the safe from the Mad River.
 {¶ 4} The Steinmans lived at 2323 E. County Line Road in Springfield. On March 5, 2004, they returned home to find a black Ford truck pulled into their driveway and doors to the home broken open. The truck had distinctive license plates, and it had been stolen from its owners the previous week. Mr. Steinman knew that there had been other break-ins in the area and immediately concluded that someone was inside his house. The Steinmans did not have a cellular phone and none of their neighbors were home, so Mr. Steinman decided to enter the house. He encountered one person in the hall closet, slamming the door on him. He then encountered a man he later identified as Frock in the master bedroom. Mr. Steinman kicked Frock in the stomach but did not remember anything after that, having been knocked unconscious. Mr. Steinman suffered fractures of his nose, eye, cheek, and tooth. Mr. Steinman identified Frock and Joshua Brewer from police photo arrays three days later as the men who had been in his house. Mrs. Steinman, who had remained outside and had seen at least one man fleeing from the house, was unable to identify anyone from the photo arrays shortly after the crimes, but she did identify Frock in court.
 {¶ 5} The deputies investigating the burglaries had received some tips about Brewer and Frock driving a stolen black Ford truck and selling guns out of a white Chrysler that belonged to Frock's mother. Accordingly, they were looking for the men. On March 12, 2004, deputies observed Frock in the backseat of a gray vehicle and took steps to stop the vehicle. Before they accomplished this, however, Frock got out of the car and was observed standing behind a nearby garage. When Frock saw the deputies, he ran away from them, but he was apprehended a short time later.
 {¶ 6} At trial, Brewer testified against Frock pursuant to a plea agreement. Brewer testified that he and Frock had committed a March 3 burglary on Sigler Road in Frock's mother's car, a white Chrysler, during which they had taken a safe. They had later opened the safe at Frock's sister's house. He further testified that they had committed a burglary on March 5 on County Line Road during which the owners had returned home. According to Brewer, a third man, Christopher Rife, had been involved with this burglary as well. Brewer testified that Frock had hit the owner and then run from the house into the woods, while Brewer and Rife had left in a black truck that Frock had stolen earlier.
 {¶ 7} The state offered additional evidence from Frock's sister and her husband that Frock had brought a green safe matching the description of the Grimpes' safe to their house in March 2004. Frock's sister testified that he could not dispose of the safe because he "was on drugs so bad, he couldn't get up." She and her husband enlisted help to dispose of the safe. Her husband further testified that when he and Frock saw a news report about a man who been beaten during a burglary on County Line Road, Frock commented that he had "not mean[t] to hit him that hard."
 {¶ 8} Frock offered the testimony of two witnesses, his mother and his girlfriend, that he had been at a cookout with them all day on March 5, 2004. The girlfriend testified that Brewer had also been at the cookout but left the cookout for awhile, having been picked up by a black truck. She stated that Frock had not left the cookout.
 {¶ 9} The state presented evidence to rebut the alibi evidence offered by Frock. One of the deputies who interviewed Frock on March 12, 2004, testified that Frock had offered as an alibi that, at the time of the Steinman burglary on March 5, he had been at a hotel that was under surveillance for drug activity. One of Frock's former girlfriends also testified that Frock's mother had asked her to say that she had been at a cookout with him on March 5, but this had not been true.
 {¶ 10} In Case No. 04CR188, Frock was indicted, along with Brewer, for aggravated robbery, aggravated burglary, two counts of receiving stolen property, and safecracking. The aggravated robbery and aggravated burglary counts related to a break-in at the Steinman home on March 5, 2004, and the safecracking count related to the safe that was taken from the Grimpe home on March 3, 2004. In Case No. 04CR547, Frock was indicted for burglary of the Grimpe home on March 3, 2004. These cases were consolidated for trial.
 {¶ 11} In Case No. 04CR188, Frock was found guilty on October 21, 2004, of aggravated burglary and safecracking, but was acquitted of aggravated robbery and receiving stolen property. The other counts were apparently dismissed. Frock was sentenced to ten years for aggravated burglary and eighteen months for safecracking. In Case No. 04CR0547, Frock was found guilty of burglary and was sentenced to eight years in prison. The court ordered the two sentences in Case No. 04CR188 to be served consecutive to each other and consecutive to the prison term imposed in Case No. 04CR547.
 {¶ 12} Frock raises ten assignments of error in his brief and supplemental brief. We address these assignments in the order that facilitates our discussion.
 {¶ 13} X. "MR. FROCK'S CONVICTION FOR BURGLARY IN CASE NO. 04-CR5-47 MUST BE REVERSED BECAUSE THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO PROVE THAT CHARGE BEYOND A REASONABLE DOUBT."
 {¶ 14} Frock argues that, with respect to the Grimpe burglary, the state offered insufficient evidence that someone other than an accomplice of the offender was "present or likely to be present" at the home at the time of the alleged burglary, and therefore failed to establish an element of the offense.
 {¶ 15} The sufficiency of the evidence is a term of art meaning that legal standard which is applied to determine whether the evidence is legally sufficient to support the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380,386, 1997-Ohio-52, 678 N.E.2d 541, citing Black's Law Dictionary (6th Ed. 1990) 1433. When a reviewing court addresses a sufficiency of the evidence question, "the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." State v.Martin (1983), 20 Ohio App.3d 172, 175, 785 N.E.2d 717.
 {¶ 16} With respect to the Grimpe burglary, Frock was charged pursuant to R.C. 2911.12(A)(2), which provides:
 {¶ 17} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 18} "* * *
 {¶ 19} "(2) Trespass in an occupied structure * * * that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]"
 {¶ 20} "Although the term `likely' connotes something more than a mere possibility, it also connotes something less than a probability or reasonable certainty. A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present."State v. Green (1984), 18 Ohio App.3d 69, 72, 480 N.E.2d 1128. In determining whether persons were present or likely to be present under R.C. 2911.12(A)(2), "the defendant's knowledge concerning habitation is not material. The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely." State v. Brown
(Apr. 28, 2000), Hamilton App. No. C-980907. Merely showing that people dwelled in the residence is insufficient; the state must adduce specific evidence that the people were present or likely to be present at the time of the burglary. State v. Fowler
(1983), 4 Ohio St.3d 16, 18, 445 N.E.2d 1119.
 {¶ 21} The supreme court has held that the "likely to be present" element is satisfied where the structure is a permanent dwelling house which is regularly inhabited, the occupants were in and out of the house on the day in question, and the occupants were temporarily absent when the burglary occurred. State v.Kilby (1977), 50 Ohio St.2d 21, 23, 361 N.E.2d 1336. See, also,Fowler, 4 Ohio St.3d at 19; State v. Baker, Butler App. No. CA2003-01-16, 2003-Ohio-5986. On the other hand, courts have found insufficient evidence that the occupants were likely to be present when they were absent for an extended period, such as a vacation, and no one else was regularly checking on the house. See, e.g., State v. Cantin (1999), 132 Ohio App.3d 808,726 N.E.2d 565; State v. Brightman, Montgomery App. No. 20344,2005-Ohio-3173; State v. Hibbard, Butler App. Nos. CA2001-12-276 and CA2001-12-286, 2003-Ohio-707, ¶ 13; State v.Weber (Dec. 23, 1997), Franklin App. No. 97APA03-322; State v.Cochran (Jan. 30, 1996), Cuyahoga App. No. 50057. Similarly, if the occupants of a house are gone for the entire work day, they are not "likely to be present" during the day. See Brown,
supra.
 {¶ 22} Joanna Grimpe testified that, on the day in question, she had gone to work at 7:15 a.m. and returned around 2:00 p.m. to discover the break-in. She stated that "[e]very day I go [home] around that time and let my dog out to go to the bathroom." Grimpe did not provide any evidence about her husband's schedule, and he did not testify. According to the letter carrier's testimony, she saw the purported burglars leaving the residence between 1:00 and 1:30.
 {¶ 23} Although we view the evidence presented and the inferences reasonably drawn therefrom in the light most favorable to the prosecution, we cannot conclude that a rational trier of fact could have found beyond a reasonable doubt that someone was "likely to be present" at the Grimpe home at the time of the burglary. The evidence suggests that the burglary occurred between 1:00 and 1:30, and Mrs. Grimpe testified that she routinely returned home "around 2" to let her dog out. As such, the evidence does not support the conclusion that someone was likely to be home between 1:00 and 1:30. The evidence, instead, demonstrated that no one was likely to be present in the house between the hours of 1:00 and 1:30 p.m. Thus, the state failed to prove an essential element of burglary under R.C. 2911.12(A)(2).
 {¶ 24} Although the parties have not addressed this issue, we note that R.C. 2911.12(A)(3) sets forth a lesser included offense to the one for which Frock was charged in this case.
 {¶ 25} "[A] criminal offense may be a lesser included offense of another if (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Barnes (2002), 94 Ohio St.3d 21,25-26, 759 N.E.2d 1240, citing State v. Deem (1988),40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus. R.C.2911.12(A)(3) defines burglary as a trespass in an occupied structure by force, stealth, or deception with the purpose to commit in the structure any criminal offense. Thus, it omits the one element about which the state had failed to present sufficient evidence — the presence or likely presence of someone other than an accomplice of the offender. R.C. 2911.12(A)(3) carries a lesser penalty than R.C. 2911.12(A)(2) because it is defined as a felony of the third degree, whereas R.C.2911.12(A)(2) is a felony of the second degree. Moreover, burglary as defined in R.C. 2911.12(A)(2) cannot be committed without also having committed the lesser offense set forth at R.C. 2911.12(A)(3).
 {¶ 26} When the evidence shows that a defendant is not guilty of the degree of crime for which he was convicted (e.g., the conviction was not supported by sufficient evidence), but is guilty of a lesser crime included therein, we may modify the verdict accordingly. Crim.R. 33(A)(4); State v. Scott, Scioto App. No. 02CA2841, 2002-Ohio-7083. Accordingly, Frock's conviction for a violation of R.C. 2911.12(A)(2) must be vacated, but we will enter a judgment of conviction on the lesser included offense of burglary in violation of R.C. 2911.12(A)(3). We will remand to the trial court for resentencing.
 {¶ 27} The tenth assignment of error is sustained.
 {¶ 28} I. "MR. FROCK'S SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM WAS VIOLATED WHEN THE STATE PRESENTED, AND THE COURT ALLOWED OVER OBJECTIONS, HEARSAY TESTIMONY."
 {¶ 29} VIII. "THE TRIAL JUDGE ABUSED HIS DISCRETION IN ADMITTING HEARSAY EVIDENCE OVER OBJECTION."
 {¶ 30} Under these assignments of error, Frock objects to Deputy Suver's testimony about how he had chosen to put Frock's and Brewer's pictures in the photo arrays that he showed to Mr. Steinman. Suver testified on redirect examination that he had selected the pictures because the sheriff's office had received tips that the two men had been seen with the stolen truck and had been selling stolen guns out of Frock's mother's white Chrysler. When the defense objected, the trial court instructed the jury that they should not consider this testimony for the truth of the matter asserted, but only as evidence of why the photo arrays were configured as they were. Frock claims that the state was clearly "trying to get harmful information before this jury" and that the explanation offered by the state was "a sham." Frock further argues that "no juror would be able to ignore" the statements connecting him with the stolen truck and the illegal activity associated with his mother's car.
 {¶ 31} The trial court has broad discretion in determining the admissibility of evidence, and its decision should not be reversed absent an abuse of discretion. State v. Sage (1987),31 Ohio St.3d 173, 180, 510 N.E.2d 343. Here, on cross-examination of Suver, the defense had probed his motivation for putting Frock and Brewer in the photo arrays, implying that they were suspected in these burglaries simply because they were suspected in other burglaries in the area. Suver's testimony on redirect provided a more concrete explanation of why they were suspected of having committed these particular crimes. When viewed in conjunction with the cautionary instruction that was given to the jury, the trial court did not err in permitting this testimony.
 {¶ 32} The first and eighth assignments of error are overruled.
 {¶ 33} IX. "MR. FROCK WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 34} Frock contends that he was denied the effective assistance of counsel because his attorney did not object to the hearsay testimony about how the sheriff's deputies came to suspect Frock and Brewer of these burglaries, as discussed under the first assignment of error, and failed to object to prosecutorial misconduct during closing argument.
 {¶ 35} As we discussed under the first assignment of error, we find no error in the admission of Suver's testimony about why Frock's picture was included in the photo arrays, about which the trial court gave a cautionary instruction. We note that counsel did object to this testimony and requested the cautionary instruction. As such, counsel was not ineffective in failing to prevent the admission of this testimony.
 {¶ 36} Frock's argument about prosecutorial misconduct at closing argument focuses on the state's assertion that Brewer had confirmed Mr. Steinman's identification of Frock as "absolutely correct." He claims that this characterization was calculated to mislead the jury. However, a prosecutor may freely comment on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom. State v. Lott
(1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293. In our view, the prosecutor's comment that Brewer's testimony about Frock's involvement in the Steinman burglary corroborated Mr. Steinman's identification of Frock as one of the burglars fell within the considerable latitude to which the prosecutor was entitled. SeeMaggio v. Cleveland (1949), 151 Ohio St. 136, 140,84 N.E.2d 912; State v. Ballew, 76 Ohio St.3d 244, 255, 1996-Ohio-81,667 N.E.2d 369.
 {¶ 37} The ninth assignment of error is overruled.
 {¶ 38} II. "MR. FROCK WAS DENIED HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL BECAUSE THE STATE FAILED TO DISCLOSE INFORMATION PRIOR TO TRIAL IN VIOLATION OF CRIM.R. 16."
 {¶ 39} III. "MR. FROCK WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE 6TH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN HIS COUNSEL FAILED TO MOVE FOR A MISTRIAL OR CONTINUANCE ONCE HE LEARNED THAT THE STATE HAD VIOLATED THE DISCOVERY RULES."
 {¶ 40} Frock contends that the state withheld from the defense exculpatory information that it had received from Brewer, in violation of Crim.R. 16. The alleged exculpatory evidence was information obtained during a second unrecorded meeting between Brewer, the prosecutor, and Deputy Suver in preparation for trial. Their discussion included the manner in which events transpired during the Steinman burglary. Frock believes that Brewer's statements on these issues could have helped him to impeach the identification testimony of Mr. and Mrs. Steinman if it had been available to him prior to trial.
 {¶ 41} The prosecution violates the defendant's right to due process when it fails to exchange evidence that is both favorable to the defendant and material to guilt or punishment. Brady v.Maryland (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. Moreover, Crim.R. 16(B)(1)(f) requires the prosecutor to disclose evidence that is favorable to the defense and material to guilt or punishment. However, where the exculpatory evidence is revealed in time for the defense to use it effectively at or before trial, no constitutional violation has occurred. State v.Barzacchini (1996), 96 Ohio App.3d 440, 454, 645 N.E.2d 137, citing United States v. Presser (C.A.6, 1988), 844 F.2d 1275, 1283.
 {¶ 42} Frock claims that the disclosure of Brewer's statements to the prosecutor and sheriff's deputy would have better enabled him to impeach the eyewitness testimonies of Mr. and Mrs. Steinman. The prosecutor asserted that Brewer's statements at this meeting were consistent with his trial testimony. Assuming this to be true, the discrepancies between Brewer's and the Steinmans' testimonies identified by Frock about which he had not been previously aware were as follows: 1) Brewer testified that he had not been the man that Mr. Steinman slammed in the closet, whereas Mr. Steinman's testimony implied that Brewer had been the man in the closet; and 2) Brewer stated that Frock had fled through the yard rather than getting into the truck, whereas Mrs. Steinman, who had never entered the house and only saw the person who fled to the truck, identified Frock at trial.
 {¶ 43} In our view, it is questionable whether Brewer's location during the burglary was material to Frock's guilt or whether the discrepancy in this respect was favorable to him. Significantly, Brewer was testifying to Frock's involvement in the crime. It is implausible that the jury could have interpreted Brewer's statement in such a way as to exonerate either Frock or Brewer. Moreover, even if this testimony had raised doubts about the reliability of Mr. Steinman's identification of Brewer, it did not directly implicate his identification of Frock. As such, we conclude that any error in this regard was harmless beyond a reasonable doubt.
 {¶ 44} Brewer's statement had a more direct bearing on Mrs. Steinman's identification testimony, but its exculpatory value was not apparent until she had identified Frock during the trial. She had not previously been able to pick him out of a photo array. Thus, the prosecutor cannot be faulted for failing to recognize or anticipate the value of Brewer's statements about Frock's absence from the truck. We also note that the value of Mrs. Steinman's in-court identification was low precisely because she had been unable to pick Frock out of a photo array shortly after the burglary.
 {¶ 45} In sum, Frock was not denied his right to a fair trial by the prosecutor's failure to disclose the contents of his second interview with Brewer prior to trial. The location at which Mr. Steinman saw Brewer was not material to Frock's guilt, and the value of Brewer's statement for the impeachment of Mrs. Steinman was not apparent until trial.
 {¶ 46} Frock also claims that he was denied the effective assistance of counsel because his attorney did not request a continuance or a mistrial in response to the information that was "withheld" from the prosecutor's interview with Brewer. He does not make a specific argument as to what purpose a continuance or mistrial could have served, and we are unpersuaded, given the nature of the "withheld" information, that either a continuance or a mistrial was warranted. As such, Frock was not denied the effective assistance of counsel based on his attorney's response to the information that was not disclosed.
 {¶ 47} The second and third assignments of error are overruled.
 {¶ 48} IV. "MR. FROCK WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE 6TH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN HIS COUNSEL FAILED TO MOVE FOR SUPPRESSION OF THE IDENTIFICATION TESTIMONY OF MR. STEINMAN."
 {¶ 49} Frock claims that his counsel was ineffective in failing to move to suppress the identification testimony offered by Mr. Steinman on the grounds that the identification procedure was unduly suggestive. Frock claims that he stood out in the photo array because he was wearing "a light yellowish/gold button down silk shirt with a collar" while all of the other men in the array were wearing dark shirts with no collars. He also contends that there were numerous other indicia that Mr. Steinman's identification was not reliable.
 {¶ 50} Generally, identification testimony is admissible unless the identification procedure was unnecessarily suggestive of guilt and unreliable under the totality of the circumstances.Manson v. Brathwaite (1977), 432 U.S. 98, 114, 97 S.Ct. 2243,53 L.Ed.2d 140; State v. Brown (1988), 38 Ohio St.3d 305, 310,528 N.E.2d 523. "When an eyewitness to a crime is shown a series of photographs in an effort to identify a perpetrator, and the manner or mode of the presentation suggests that one individual is more likely than the others to be the perpetrator — such as when the photograph of one individual is in some way emphasized — undue suggestion may occur, increasing the likelihood of misidentification and violating the due process rights of a defendant so identified. Simmons v. United States (1968),390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; Neil v. Biggers
(1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; State v.White (Feb. 2, 1994), Clark App. No. 3057. Identification testimony tainted by an unduly suggestive out-of-court identification procedure may be suppressed. However, even if an identification procedure is unduly suggestive, the identification testimony derived therefrom is not per se inadmissible solely for that reason. Reliability of the identification is the linchpin in determining its admissibility. Manson v. Brathwaite (1977),432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140." State v. Keene (Sep. 20, 1996), Montgomery App. No. 14375.
 {¶ 51} Frock focuses his argument primarily on the fact that his clothing was distinctive from that of the other men in the photo array. Although Frock's clothing was lighter in color than the other men, we cannot say that it was so distinctive as to make the photo array unduly suggestive. We also note that the facial characteristics and haircuts of the men are very similar. We are unpersuaded that this photo array increased the likelihood of misidentification.
 {¶ 52} Frock also infers from Brewer's testimony that Mr. Steinman never saw Brewer and argues that "[t]he fact that Mr. Steinman picked out Josh Brewer without ever seeing him is a strong indication that Mr. Steinman's identification abilities in this case were highly questionable." There was, of course, conflicting testimony about whether Mr. Steinman had seen Brewer. The fact that Brewer's testimony suggests that Mr. Steinman never saw him goes to the weight of the evidence, not its admissibility. Further, Frock infers some degree of unreliability from the fact that Mr. Steinman took one to two minutes to make an identification when looking at the photo array. We note that this fact could as readily be interpreted as conscientiousness, rather than as uncertainty, and that, in any event, it certainly did not make the identification inadmissible.
 {¶ 53} Because the evidence is quite weak that Mr. Steinman's identification was based on an unduly suggestive photo array or was inherently unreliable, we cannot conclude that his attorney was ineffective in failing to move to suppress this evidence.
 {¶ 54} The fourth assignment of error is overruled.
 {¶ 55} V. "THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF MR. FROCK'S FLIGHT FROM POLICE IN ORDER TO PROVE HIS GUILT IN VIOLATION OF OHIO EVID.R. 401-404."
 {¶ 56} Frock claims that evidence should not have been permitted regarding the fact that he had fled from the police after the burglaries with which he was charged. He argues that, because his flight and subsequent arrest occurred several days after the burglaries, there was no evidence that his flight was related to these offenses. He also asserts that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice, citing Evid.R. 403(A).
 {¶ 57} It is well established that evidence of flight from the scene of a crime, resisting arrest, escape, and the like are permissible as evidence of consciousness of guilt and, thus, of guilt itself. See State v. Brooks, Cuyahoga App. No. 83668,2005-Ohio-3567; State v. Tisdale, Montgomery App. No. 19346, 2003-Ohio-4209; State v. Stevens (Apr. 3, 1998), Montgomery App. No. 16509. However, where the evidence showing the alleged consciousness of guilt is more removed in time and place from the offense for which the defendant is on trial, some courts have been more reticent about permitting such evidence. See, e.g.,State v. Tubbs (Feb. 25, 1994), Mahoning App. No. 92 CA 45. As such, evidence of flight to support an inference of guilt should generally be limited to situations when the activities associated with flight occur at a time and place near the criminal activity for which the defendant is on trial. Id.
 {¶ 58} Frock's flight from the police and subsequent arrest occurred at a separate time and place from any of the offenses for which he was charged in this case. His arrest occurred a week after the Steinman burglary and nine days after the Grimpe burglary. Although we have no trouble concluding that his flight was indicative of consciousness of guilt, the nexus between that consciousness of guilt and the particular crimes charged in this case was tenuous. Thus, in our view, the trial court erred in admitting this evidence.
 {¶ 59} Error related to the admission of evidence is harmless beyond a reasonable doubt "if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt."State v. Williams (1983), 6 Ohio St.3d 281, 290,452 N.E.2d 1323. The evidence on the Steinman burglary, including eyewitness identification and the testimony by Frock's alleged accomplice, did constitute overwhelming proof of his guilt, even in the absence of the evidence of flight. Likewise, the testimony by Frock's sister and her husband that Frock had brought the Grimpes' safe to their house shortly after that offense and that Frock had expressed regret at having hit Mr. Grimpe so hard when the story was reported on the news provided compelling evidence of his guilt without the evidence of flight. Brewer also testified to Frock's involvement in the Grimpe burglary. Accordingly, we conclude that the trial court's error in admitting evidence of flight was harmless.
 {¶ 60} The fifth assignment of error is overruled.
 {¶ 61} VI. "CUMULATIVE ERRORS COMMITTED IN THIS TRIAL, EVEN IF INDIVIDUALLY INSUFFICIENT TO CONSTITUTE REVERSIBLE ERROR, IN THE AGGREGATE DEPRIVED MR. FROCK OF HIS FUNDAMENTAL RIGHT TO DUE PROCESS AND A FAIR TRIAL."
 {¶ 62} Under Frock's sixth assignment of error, he argues that the cumulative weight of the errors denied him a fair trial. We have identified few arguable errors, and the one that we have identified was clearly not prejudicial to Frock. Such errors cannot form the basis of a reversal based upon cumulative error.
 {¶ 63} The sixth assignment of error is overruled.
 {¶ 64} VII. "MR. FROCK WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE 6TH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN HIS COUNSEL FAILED TO OBJECT AT THE SENTENCING HEARING WHERE THE TRIAL COURT ERRED IN IMPOSING MAXIMUM AND CONSECUTIVE SENTENCES IN VIOLATION OF MR. FROCK'SFOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND MR. FROCK'S SIXTH AMENDMENT RIGHT TO A TRIAL BY JURY."
 {¶ 65} Frock claims that his counsel was ineffective in failing to object to the imposition of maximum sentences and to the order that those sentences be served consecutively. He claims that these sentences violated the Supreme Court's holdings inApprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435 and Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 2537, 159 L.Ed.2d 403. He asserts that the jury, rather than the judge, was required to make the findings that are required by statute for the imposition of such sentences.
 {¶ 66} The Supreme Court of Ohio recently held that parts of Ohio's felony sentencing scheme are unconstitutional. State v.Foster, ___ Ohio St.3d ___, 2006-Ohio-856. The unconstitutional provisions include R.C. 2929.14(C), which relates to the imposition of maximum sentences, and R.C. 2929.14(E)(4), which relates to the imposition of consecutive sentences. Following the United States Supreme Court's decisions in Apprendi v. NewJersey (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, and Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403, the supreme court held in Foster that R.C.2929.14(C) and R.C. 2929.14(E)(4) violated the principles set forth in Blakely and that the use of such sentencing criteria is unconstitutional because it "require[s] judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant." Foster at ¶ 65-67, ¶ 83. The supreme court severed the provisions that it found to be unconstitutional, including R.C. 2929.14(C) and R.C. 2929.14(E)(4). Id. at ¶ 97, ¶ 99. In light of this holding, trial courts now have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or to give their reasons for imposing maximum or consecutive sentences. Id.;State v. Mathis, ___ Ohio St.3d ___, 2006-Ohio-855, ¶ 37.
 {¶ 67} Because Foster held the statutes under which Frock's sentence was imposed to be unconstitutional and severed them from the sentencing provisions of the Revised Code, we must remand Frock's case for a new sentencing hearing on this basis as well as for the reasons set forth in our discussion of the tenth assignment of error, supra. Foster at ¶ 104-105. At the sentencing hearing, the trial court "shall consider those portions of the sentencing code that are unaffected by [Foster] and impose any sentence within the appropriate felony range."
 {¶ 68} The judgment of the trial court will be modified with respect to Frock's conviction for the burglary of the Grimpe home, Case No. 04CR547, to reflect a conviction on the lesser included offense of burglary in violation of R.C. 2911.12(A)(3), and the matter will be remanded for resentencing. Frock's sentence in Case No. 04CR188 will be reversed, and the matter remanded for resentencing. In all other respects, the judgment in Case No. 04CR188 will be affirmed.
Brogan, J. and Fain, J., concur.